UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JINNI TECH LTD, et al., | CASE NO. C17-0217JLR |
| Plaintiffs, | ORDER |
| v. | |
| RED.COM, INC., et al., | |
| Defendants. | |

## I.  INTRODUCTION

Before the court are (1) Red.com, Inc. and Red.com, LLC's (collectively, "Defendants" or "RED") motion to dismiss under Federal Rules of Civil Procedure 12(b)(2), 12(b)(3), and 12(b)(6), or in the alternative, to transfer venue to the district court for the Central District of California (MTD (Dkt. # 15)); and (2) Jinni Tech Ltd ("Jinni Tech") and Bruce Royce's (collectively, "Plaintiffs") surreply to strike Defendants' reply in its entirety (Surreply (Dkt. # 29)).  The court has considered the parties' submissions in support of and in opposition to the motion to dismiss, the relevant

portions of the record, and the applicable law. Being fully advised,[1] the court GRANTS

in part and DENIES in part Defendants' motion to dismiss and STRIKES the portions of

Defendants' reply that advance the forum selection clause argument.

## II.    BACKGROUND

This case stems from the competing products manufactured and sold by the parties

in the filmmaking equipment industry.[2]  (*See* FAC (Dkt. # 10) ¶¶ 3-6.)  RED

manufactures and sells high-end, digital cameras—the RED digital cameras—which are

widely used by the filmmaking community.  (*See id.* ¶¶ 42-44.)  As part of their business,

Defendants also sell the RED Mini-Mag—a memory storage device, known as a solid

state drive ("SSD"), that is compatible with the RED digital cameras.  (*Id.* ¶¶ 41-42.)

Defendants' President, Jarred Land, owns and operates a website called reduser.net,

which hosts a forum for individual RED camera owners and others active in the

cinematography industry to "share information about RED cameras and accessories."

(*Id.* ¶¶ 23, 43-44.)

Jinni Tech also manufactures cinematography equipment.  (*See id.* ¶ 34.)  Its

founder, Mr. Royce, is an engineer who has worked in the television industry, and he

formed Jinni Tech to manufacture and sell high-quality products for professional cameras

and computer systems used in film production.  (*Id.* ¶¶ 18-19, 34-36.)  Jinni Tech

---

[1] Neither party requests oral argument, and the court finds oral argument unnecessary to its disposition of the motion.  *See* Local Rules W.D. Wash. LCR 7(b)(4).

[2] Because at the motion to dismiss stage the court must take the facts in the complaint as true, the following facts are from Plaintiffs' amended complaint.  *See Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 2008).

introduced its competing SSD media accessory called the JinniMag, which it marketed as "an affordable third-party media accessory that is compatible with RED cameras." (*Id.* ¶ 38; *see id.* ¶¶ 34-37.) Jinni Tech introduced the JinniMag on July 31, 2016. (*Id.* ¶¶ 37, 66-67.)

Plaintiffs' claims arise from the events occurring after Jinni Tech unveiled the JinniMag: (1) a series of allegedly false statements made or encouraged by Defendants after the introduction of the JinniMag; and (2) a separate patent infringement suit regarding the JinniMag filed by Defendants in the Central District of California.[3] (*See id.* ¶¶ 107-88.) The court recites the relevant facts as to each category of claims below.

## A. Statements Regarding Plaintiffs After the Introduction of JinniMag

On July 31, 2016—the same day that the JinniMag was introduced—Mr. Land posted on a Facebook group of RED consumers that the JinniMag "is not legit . . . not certified . . . not endorsed . . . . Even if this was real there are too many inaccuracies and violations going on here to list." (*Id.* ¶ 68.) This post was subsequently republished on other Facebook groups of RED camera users. (*See id.* ¶ 70.) Many Facebook users subsequently "warned RED customers and other users that Mr. Land identified JinniMag as a 'scam' and 'IP theft' and 'a fake.'" (*Id.* ¶ 71.)

//

//

---

[3] Plaintiffs also assert that several statements Defendants made regarding the RED Mini-Mag constitute false advertising in violation of the Lanham Act, 15 U.S.C. § 1125(a). (FAC ¶¶ 107-15.) Aside from the general challenges to jurisdiction and venue, Defendants do not specifically challenge the factual assertions supporting the false advertising claim. (*See* MTD at 6-8.) Thus, the court does not recite the factual allegations supporting this claim.

The same day, Mr. Land posted a message on the reduser.net forum about the introduction of the JinniMag:

> For some random company to hack and duplicate our IP and our firmware (which is the only way they could do this) is exactly like someone stealing your films and calling them their own and selling them to others.
>
> I don't know where this company is from.  I assume the UK cover is just bullshit.  Someone said China but I really hope this is not the case as China has made such significant improvements over the last decade turning around their attitude towards Copyright infringement, Trademark violations, and IP theft (which it appears this company has broken all three in one swoop)[.]
>
> I will shut RED completely down . . . I am not kidding . . . If stealing each other's [product] suddenly is deemed acceptable.

(*Id.* ¶ 75.)  Like the Facebook post above, Mr. Land's message on reduser.net was republished and repeated by other users.  One user stated that "cheap knock off SSDs" like JinniMag "are clearly engaging in criminal behavior."  (*Id.* ¶ 77a.)  Another user accused Jinni Tech of having "stolen someone else's fruit of their [sic] hard labor and financial commitment."  (*Id.* ¶ 77d.)

Occasionally, users would "express[] appreciation for Jinni Tech's lower-priced JinniMag alternative," but Mr. Land would "shout them down with intimidating messages aimed at inflaming RED's users against Jinni Tech."  (*Id.* ¶ 79.)  For example, on August 1, 2016, a user shared that he or she would be interested in "pick[ing] up a few [JinniMags]" because RED prices are "incredibly over-inflated."  (*Id.* ¶ 80.)  Mr. Land responded the same day, stating:

> We invented something.  Someone is saying they have stole[n] it.  And you are sitting there telling everyone that is ok.

//

ORDER - 4

It is the same as if you saved up or borrowed $10,000,000[.00] and went and wrote and directed and shot your film. [Y]ou edit it together and finish it and put it up on Itunes for $9.99 to get your money back.

But someone from [C]hina looks at your film and . . . just download[s] this guy[']s film, steal[s] it, change[s] the opening credits with [his or her] logo and reupload[s] it on Itunes and only charge[s] $1.00. That's not right.

(*Id.* ¶ 81.) Later in the same thread, Mr. Land posted:

Lawyers will deal with these guys doing this . . . but it is you guys that think that this is OK that have me way way way more pissed off.

(*Id.* ¶ 82.)

After Mr. Land's postings, other users continued to discuss Jinni Tech and the JinniMag in a disparaging light. One user suggested that Mr. Land "try to take them down through the FBI" (*id.* ¶ 85a); others proposed that RED sue Jinni Tech, block its product, or void the warranties of customers who chose to use JinniMag (*id.* ¶ 85c). In December, when a user promoted the JinniMag on the forum, others responded immediately that it was "[n]ot a good idea to be promoting that around here." (*Id.* ¶ 86a.) Another user concurred: "[Mr. Land] had some very stern warnings when this came up in the past. Basically it's IP theft. I would take the warnings seriously." (*Id.* ¶ 86b.)

The online postings escalated as users on reduser.net began to share personal information about Mr. Royce. On August 1, 2016, one user posted Mr. Royce's name, personal email address, and phone number on reduser.net. (*Id.* ¶ 90.) Defendants did not remove this information or warn users to refrain from posting personal identifying information. (*Id.* ¶ 91.) Other users personally attacked Mr. Royce on various online

//

forums.  (*See id.* ¶ 94.)  Defendants did not discourage these users from doing so and took no action to prevent any such attacks in the future.  (*Id.* ¶ 95.)

As a result of these postings, Plaintiffs allege that Mr. Royce and his family suffered "serious emotional distress, anxiety, and stress, resulting in harm to Mr. Royce's emotional and physical health, including severe physical pain and a sleep disorder."  (*Id.* ¶ 98.)  Moreover, the comments have caused "serious damage to Mr. Royce's professional reputation."  (*Id.* ¶ 97.)

After these disparaging comments, Plaintiffs noticed that "many potential customers who expressed an interest in buying [its] products declined to do so."  (*Id.* ¶ 87.)  For instance, one consumer had ordered the JinniMag but canceled her order after seeing the Facebook comments, explicitly explaining that she was "not touching these" because they were "[b]ad mojo."  (*Id.* ¶ 87b.)  Another user posted that he or she was "excited by [JinniMags] when they were first announced, but now that it turns out that they've got no permissions to create them I'm steering well clear."  (*Id.* ¶ 87a.)

Plaintiffs filed suit on February 10, 2017.  (*See* Compl. (Dkt. # 1).)  Their complaint alleges that Defendants falsely advertised its products and engaged in unfair competition, in violation of the Lanham Act, 15 U.S.C. § 1125(a).  (*Id.* ¶¶ 90-108.)  It also asserted various violations of Washington law, including product disparagement and trade libel (*id.* ¶¶ 109-15); tortious interference (*id.* ¶¶ 116-22); intentional and negligent infliction of emotional distress (*id.* ¶¶ 136-43); defamation (*id.* ¶¶ 144-52); and portraying Plaintiffs in a false light (*id.* ¶¶ 153-61).  Finally, the complaint alleged that Defendants violated the Washington Consumer Protection Act by engaging in unfair

competition in violation of RCW 19.86 (*id.* ¶¶ 123-28) and violating Mr. Royce's right of privacy in contravention of RCW 9.73.060 (*id.* ¶¶ 129-35).

**B.    Patent Infringement Claims**

A month later, on March 2, 2017, Red.com, Inc. brought suit against Jinni Tech and Mr. Royce in the Central District of California, alleging patent infringement, trademark infringement, and various other violations of federal and state law.  *See generally Red.com, Inc. v. Jinni Tech, Ltd.*, No. 8:17-cv-00382-CJC-KES, Dkt. # 1 ("Compl.") (C.D. Cal.) (hereinafter, "the patent infringement suit").[4]  The complaint describes the '385 patent, owned by RED, which covers the RED SSD accessories.  *Id.*, Compl. ¶ 14.  It asserts that Jinni Tech and Mr. Royce "have in the past infringed and are currently infringing the '385 patent."  *Id.*, Compl. ¶ 43.

Jinni Tech and Mr. Royce moved to dismiss the patent infringement suit on various grounds, including lack of personal jurisdiction and improper venue, and alternatively, to transfer the action to this district.  *Id.*, Dkt. # 30 ("Order on MTD") at 1-2.  The District Court denied the motion.  *See generally id.*, Order on MTD.  First, the court found that it has personal jurisdiction over Jinni Tech and Mr. Royce because they "committed intentional acts directed *at the forum* which they knew would have a direct effect on [Red.com, Inc.] *in the forum*."  *Id.*, Order on MTD at 9.  Moreover, the court

---

[4] Both parties rely on this patent infringement action in its briefing.  (*E.g.*, MTD at 3 n.3; Resp. at 15-16.)  The court takes judicial notice of the publicly filed court documents associated with this action.  *See Intri-Plex Techs., Inc. v. Crest Grp., Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007) (allowing the court to take judicial notice of matters of public record that are not subject to reasonable dispute).

concluded that venue is proper because the "alleged acts of infringement were directed at [Red.com, Inc.] whose principal place of business and website servers are located in this judicial district." *Id.*, Order on MTD at 15.  Lastly, the court declined to transfer venue. *Id.*, Order on MTD at 17.

On May 23, 2017, Jinni Tech and Mr. Royce filed an amended complaint in this suit, adding two claims seeking declaratory judgments of noninfringement and invalidity of the '385 Patent—the same patent at issue in the patent infringement suit currently pending in the Central District of California.  (*See* FAC ¶¶ 183-88.)

### III.    ANALYSIS

Defendants move to dismiss Plaintiffs' claims under Federal Rules of Civil Procedure 12(b)(2) for lack of personal jurisdiction, 12(b)(3) for improper venue, and 12(b)(6) for failure to state a claim.  (MTD at 5-6.)  Plaintiffs oppose the motion and move to strike Defendants' reply brief.  (*See* Surreply at 1.)  The court first addresses Plaintiffs' motion to strike and then turns to each basis for dismissal.

**A.    Motion to Strike**

Plaintiffs move this court pursuant to Local Civil Rule 7(g) to strike Defendants' reply brief in its entirety for "add[ing] new facts and arguments which were not raised in its [m]otion."  (Surreply at 1.)  Specifically, Plaintiffs challenge Defendants' argument that Plaintiffs are subject to exclusive personal jurisdiction in California because of "four adhesion agreements" that each include a "forum selection clause."  (*Id.* at 2.)

//

"New arguments may not be introduced in a reply brief," *United States v. Puerta*, 982 F.2d 1297, 1300 n.1 (9th Cir. 1992), and a court "need not consider arguments raised for the first time in a reply brief," *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007). If new facts or arguments are introduced in a reply, the nonmoving party may file a surreply requesting that the court strike the material. Local Rules W.D. Wash. LCR 7(g).

Defendants introduce both new facts and new arguments in their reply. For the first time, Defendants introduce various contracts that Mr. Royce allegedly agreed to, including the Red Website Terms of Use, the Red Firmware License Agreement, the R3D SDK License Agreement, and the Redlink™ SDK License Agreement, all of which contain forum selection clauses. (*See* Reply at 3-5.) They did not, however, raise any of these contractual agreements in the motion to dismiss. (*See generally* MTD.) Defendants then rely on these newly introduced facts to argue that the forum selection clauses deprive this court of jurisdiction. (Reply at 6-7.) Defendants again did not raise this argument in the motion to dismiss. (*See generally* MTD.) Because the forum selection argument was not raised until Defendants' reply, the court will not consider this argument and strikes the portions of the reply advancing this new argument.

However, the court does not agree that it must strike the reply in its entirety, as Plaintiffs urge. (*See* Surreply at 1.) Certain portions of the reply deal with arguments that previously raised, such as the impact of Red.com, Inc.'s conversion to Red.com, LLC (Reply at 8-9); Plaintiffs' failure to dispute that Defendants could not be held liable for the posts of unaffiliated individual users (*id.* at 10-11); and Defendants' contention that Mr. Land was acting outside the scope of his employment (*id.* at 11-12). These

portions of the reply do not introduce new facts or arguments, and the court declines to strike them.

Accordingly, the court strikes only the parts of the reply that advance the argument involving the forum selection clauses. The remainder of the reply stands as filed.

**B.  Motion to Dismiss for Lack of Personal Jurisdiction**

Defendants argue that the amended complaint fails to establish personal jurisdiction over them, and they therefore move to dismiss all claims on that basis. (MTD at 8-18.) Plaintiffs disagree. (Resp. at 6-9.) For the reasons stated below, the court concludes that it has personal jurisdiction over Defendants.

1.  <u>Legal Standard</u>

Federal Rule of Civil Procedure 12(b)(2) allows a defendant to move to dismiss for lack of personal jurisdiction. *See* Fed. R. Civ. P. 12(b)(2). "In opposing a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper." *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011). However, in the absence of an evidentiary hearing, "the plaintiff need only make 'a prima facie showing of jurisdictional facts to withstand the motion to dismiss.'" *Wash. Shoe Co. v. A-Z Sporting Goods, Inc.*, 704 F.3d 668, 671-72 (9th Cir. 2012) (quoting *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006)). Although a plaintiff cannot simply rest on the bare allegations of her complaint, the court must accept uncontroverted allegations in the complaint as true, and conflicts between parties over statements in affidavits must be resolved in the plaintiff's favor. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).

The test for personal jurisdiction involves two basic inquiries: (1) whether the applicable long-arm statute is satisfied; and (2) whether the assertion of personal jurisdiction satisfies due process. *See CollegeSource*, 653 F.3d at 1073. Where, as here, no federal long-arm statute applies, the court applies the long-arm statute of the state in which it sits. *Schwarzenegger*, 374 F.3d at 800. "Washington's long-arm statute extends jurisdiction over a defendant to the fullest extent" due process permits. *Wash. Shoe*, 704 F.3d at 672 (citing RCW 4.28.185; *Shute v. Carnival Cruise Lines*, 783 P.2d 78, 82 (Wash. 1989)). Thus, the court's jurisdictional analysis collapses into a determination of whether the exercise of personal jurisdiction comports with due process. *Wash. Shoe*, 704 F.3d at 672.

"Due process requires that the defendant 'have certain minimum contacts' with the forum state 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015) (quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945) (internal quotation marks omitted)). "The strength of contacts required depends on which of the two categories of personal jurisdiction a litigant invokes: specific jurisdiction or general jurisdiction." *Ranza*, 793 F.3d at 1068. The court concludes that it has general jurisdiction over Defendants because Red.com, Inc. was incorporated in the State of Washington and thus does not reach the question of specific jurisdiction.

//

//

//

2. <u>General Jurisdiction</u>

The standard for finding general personal jurisdiction over a defendant is "exacting" because it "permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world." *Schwarzenegger*, 374 F.3d at 801; *see also Ranza*, 793 F.3d at 1069. "For an individual, the paradigm focus for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011). "With respect to a corporation, the place of incorporation and principal place of business are 'paradig[m] . . . bases for general jurisdiction.'" *Daimler AG v. Bauman*, --- U.S. ---, 134 S. Ct. 746, 760 (2014) (quoting *Goodyear*, 564 U.S. at 735). Thus, in determining whether general jurisdiction is proper, the court first ascertains whether the defendant is incorporated or has its principal place of business in the forum state. *See id.* at 761.

The court finds that it has general jurisdiction over both Red.com, Inc. and Red.com, LLC, and analyzes each entity in turn.

   a. *Red.com, Inc.*

Because the place of incorporation is a paradigm basis for general jurisdiction over a corporate defendant, the personal jurisdiction inquiry with respect to Red.com, Inc. is straightforward. It is undisputed that Red.com, Inc. was incorporated in Washington. (*See* MTD at 18; Resp. at 7.) Thus, Red.com, Inc. is subject to general jurisdiction here.

Defendants do not dispute Red.com, Inc.'s place of incorporation. (MTD at 18.) Instead, they highlight that Red.com, Inc.'s principal place of business is not in

Washington. (*Id.* at 17.) They emphasize that Red.com, Inc. had no employees based in Washington, "had no stores, or other business relationships with anyone in Washington," and never "physically sold" any RED cameras or accessories here. (*Id.*) Thus, Defendants contend that requiring Red.com, Inc. to submit to jurisdiction here when "it has never conducted any business in Washington" would violate due process. (*Id.* at 18.)

Defendants' contention fails for two reasons. First, it is factually inaccurate. Defendants claim to have no employees in Washington, but they concede that there is at least "one employee who lives on Orcas Island and maintains a business address at . . . Eastsound, Washington."[5] (*Id.* at 17 n.7.) They purport to have no business relationships in Washington, but by their own admission, Red.com, Inc. owns property here.[6] (Land Decl. (Dkt. # 17) ¶ 7 (describing the Eastsound, Washington property as "100% owned by Red.com, Inc."); *see also id.* Ex. B.) They maintain that they never sold any RED merchandise in Washington, but Defendants' website identifies a "RED Authorized Dealer[]" in Seattle where consumers may "purchase RED gear." (Whitaker Decl. (Dkt. # 22) ¶ 5, Ex. C (listing Glazer's Camera Supply, Inc. in Seattle as an authorized dealer).) Indeed, Glazer's Camera Supply, Inc. sells multiple RED products—including the exact

//

---

[5] Defendants attempt to explain away this employee as "an administrative assistant" who "support[s] . . . non-Red.com, LLC activities." (MTD at 17 n.7.) But Defendants admit that she is "technically an employee." (*Id.*) The court agrees with Plaintiffs that "[i]t is unclear what distinction [RED] is attempting to make concerning that employee" (*see* Resp. at 8) and rejects the idea that a person who is "technically" an employee is simultaneously not an employee.

[6] It is unclear from the deposition and attached property listing whether Red.com, Inc. still owns the property. (*See* Land Decl. ¶ 7, Ex. B.) Regardless, the ownership of land at any point in the state undercuts Defendants' assertion that they have no relationship to Washington.

product underlying Plaintiffs' false advertising claim (*id.* ¶ 6, Ex. D)—and offers workshops sponsored by RED (*id.* ¶ 4, Ex. B).[7]

Second, even if Defendants' assertions were true, they fail as a matter of law. Defendants seem to contend that because Red.com, Inc. does not have its primary place of business in Washington, its place of incorporation is somehow negated for personal jurisdiction purposes.  (*See* MTD at 17-18.)  The law does not support this contention.  In fact, the Supreme Court has implied the opposite:  not only can both the place of incorporation and the principal place of business be bases to exert general jurisdiction, these are not the only forums where general jurisdiction is appropriate.  *See Daimler AG*, 134 S. Ct. at 760-61.  Defendants offer no case law, and the court could find none, supporting the notion that having a principal place of business different from the place of incorporation somehow erases the latter as a paradigm basis for general jurisdiction.

Because Red.com, Inc. was incorporated in the State of Washington at the time of the events giving rise to this suit, the court has general jurisdiction over Red.com, Inc.

### b.  Red.com, LLC

Defendants also imply that Red.com, LLC is an entirely different entity from Red.com, Inc. and thus warrants a wholly separate personal jurisdiction analysis.  (*See* MTD at 8-17; Reply at 8 ("The Washington corporation, Red.com, Inc., has dissolved.").)  But Defendants fail to account for the fact that Red.com, Inc. was converted into Red.com, LLC pursuant to the Washington Business Corporation Act

---

[7] The court expresses concern over Defendants' misrepresentation of the facts in its motion and cautions Defendants to be more forthright in their future filings to the court.

("WBCA"), RCW 23B.09.010, on March 31, 2017.  (*See* Whitaker Decl. ¶ 3, Ex. A (Red.com, LLC's articles of entity conversion).)  The court cannot ignore the significance of this legal conversion.

The WBCA makes clear that "[a]n entity that has been converted pursuant to this chapter is, for all purposes of the law of the state of Washington, deemed to be the same entity that existed before the conversion."  RCW 23B.09.050(1).  Specifically, "the conversion is not deemed to constitute a dissolution of the converting entity."  *Id.*  The statute explicitly addresses how conversion impacts the converting entity's liabilities:

> [A]ll debts, liabilities, and other obligations of the converting entity continue as obligations of the surviving entity, remain attached to the surviving entity, and may be enforced against it to the same extent as if the debts, liabilities, and other obligations had originally been incurred or contracted by it in its capacity as the surviving entity.

*Id.* 23B.09.050(2)(b).  The statute is equally clear on how conversion affects jurisdiction over the surviving entity:

> (3) When a conversion of a domestic corporation to a foreign other entity becomes effective, the surviving entity is deemed:
> (a) To consent to the jurisdiction of the courts of this state to enforce any obligation owed by the converting entity, if before the conversion the converting entity was subject to suit in this state on the obligation[.]

*Id.* 23B.09.050(3).

Here, Red.com, Inc. is a "domestic corporation"—an entity organized under the laws of Washington—and the converting entity.  (Whitaker Decl. Ex. A); *see* RCW 23B.09.005(2).  Red.com, LLC is a "foreign other entity"—an entity organized under a law other than the laws of Washington—and the surviving entity.  (Whitaker Decl. Ex. A); *see* RCW 23B.09.005(3).  Thus, any liabilities of Red.com, Inc. "continue as

obligations of" Red.com, LLC, "remain attached to" Red.com LLC, and "may be enforced against" Red.com, LLC "to the same extent as if [the liability] had originally been incurred or contracted by" Red.com, LLC. Moreover, Red.com, LLC, as a foreign surviving entity, has consented to the jurisdiction of this court to enforce any liability of Red.com, Inc. Accordingly, Red.com, LLC cannot assert that it is outside the court's jurisdiction when it has agreed under Washington law to these conditions of conversion.

Defendants insist that Red.com, LLC has not consented to jurisdiction in Washington because this suit is not one that enforces any "obligation owed by" Red.com, Inc. to Plaintiffs. (Reply at 9.) They rely on a dictionary definition of "obligation" (*id.* (citing Black's Law Dictionary (10th ed. 2014)), but ignore how the conversation statute itself defines an "obligation." The WBCA states that "all debts, liabilities, and other obligations of the converting entity continue as obligations[.]" RCW 23B.09.050(2)(b). Thus, because this suit addresses a liability that could have been enforced against Red.com, Inc. pre-conversion, Red.com, LLC too, as the surviving entity post-conversion, is subject to the court's jurisdiction.

In sum, the court finds personal jurisdiction is proper over Red.com, Inc. because it was incorporated in the State of Washington. Personal jurisdiction is likewise proper over Red.com, LLC because, through the conversion process under Washington law, Red.com, LLC subsumes the liabilities of Red.com, Inc. and consents to this court's jurisdiction. Accordingly, the court denies Defendants' 12(b)(2) motion to dismiss.

//

//

**C.      Motion to Dismiss for Improper Venue or to Transfer**

The plaintiff has the burden of proving that venue is proper in the district in which the suit was initiated. *See Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979). When there are multiple claims in an action, the plaintiff must establish that venue is proper as to each defendant and as to each claim. *Markel Am. Ins. Co. v. Pac. Asian Enter.*, No. 07-5749, 2008 WL 2951277, at *2 (N.D. Cal. July 28, 2008). When deciding a challenge to venue, the court may consider facts outside of the pleadings. *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir. 1996). The court must draw all reasonable inferences in favor of the nonmoving party and resolve all factual conflicts in favor of the nonmoving party. *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1138-39 (9th Cir. 2003).

Defendants allege that this district is the improper venue for all claims. Both parties recognize that the venue analysis for the patent claims is distinct from that for the non-patent claims: Patent claims are governed by the patent venue statute, 28 U.S.C. § 1400(b), while non-patent claims are covered by the general venue statute, 28 U.S.C. § 1391(b). (*See* MTD at 18-20; Resp. at 9-11.) Alternatively, Defendants move to transfer the action to the Central District of California, where the patent infringement suit is currently pending. (*See* MTD at 20-24.) Because the venue analyses for patent and non-patent claims are distinct, the court addresses them separately.

1. Patent Claims

Section 1400(b) governs the venue inquiry for all claims arising under the United States Patent Act. *Fourco Glass Co. v. Transmirra Prods. Corp.*, 353 U.S. 222, 229

(1957).  Under that provision, venue is proper if the forum state is either (1) the defendant's residence, or (2) where the acts of infringement occurred and where the defendant maintains an established place of business.  28 U.S.C. § 1400(b).  A corporate defendant's residence is its state of incorporation.  *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, --- U.S. ---, 137 S. Ct. 1514, 1521 (2017).  Accordingly, Red.com, Inc., which is incorporated in Washington, is a resident here, and venue is proper.

However, Red.com, LLC is incorporated in Nevada.  (*See* MTD at 19.)  Plaintiffs' only argument on this matter is that because Red.com, LLC has consented to jurisdiction here, it has also "by extension" consented to venue.  (*See* Resp. at 10-11.)  This contention may be true in the context of the general venue statute, where a corporate entity's residence is tied to personal jurisdiction.  *See* 28 U.S.C. § 1391(c).  But as to § 1400(b), "the word 'residence' . . . has a particular meaning as applied to domestic corporations: It refers only to the State of incorporation."  *TC Heartland*, 137 S. Ct. at 1520.  Thus, even if Red.com, LLC had consented to personal jurisdiction, that alone is insufficient to demonstrate proper venue.[8]

Moreover, Plaintiffs' patent claims implicate the "first-to-file" rule.  "When . . . two actions that sufficiently overlap are filed in different federal district courts, one for infringement and the other for declaratory relief, the declaratory judgment

---

[8] Plaintiffs do not argue that venue is proper for Red.com, LLC under the second prong of the patent venue statute: that the acts of infringement occurred in this district and that Red.com, LLC maintains an established place of business here.  (*See generally* Resp. at 10-11.)  Because the court, as discussed below, will dismiss the patent claims pursuant to the first-to-file rule, it does not reach the issue of whether venue over Red.com, LLC is proper.

action, if filed later, generally is to be stayed, dismissed, or transferred to the forum of the infringement action." *Merial Ltd. v. Cipla Ltd.*, 681 F.3d 1283, 1299 (Fed. Cir. 2012).[9] Thus, a court may decline jurisdiction "when a complaint involving substantially similar parties and issues has already been filed in another district court." *Futurewei Techs., Inc. v. Acacia Research Corp.*, 737 F.3d 704, 707 (Fed. Cir. 2013). This rule derives from the doctrine of federal comity "that generally favors pursuing only the first-filed action when multiple lawsuits involving the same claims are filed in different jurisdictions." *Id.* Because the rule is "primarily meant to alleviate the burden placed on the federal judiciary by duplicative litigation and to prevent the possibility of conflicting judgments . . . the rule should not be disregarded lightly." *Wallerstein v. Dole Fresh Vegetables, Inc.*, 967 F. Supp. 2d 1289, 1292-93 (N.D. Cal. 2013).

The first-to-file rule is not absolute or mechanically-applied. *Guthy-Renker Fitness, LLC v. Icon Health & Fitness, Inc.*, 179 F.R.D. 264, 269 (C.D. Cal. 1998). Courts have declined to apply the rule in certain equitable circumstances. *Id.* at 270. For instance, if the later-filed action has progressed further, then efficiency considerations might disfavor application of the rule. *Id.* Moreover, the rule can be relaxed if the first

//

//

---

[9] The first-to-file rule in the patent context is governed by Federal Circuit law, although Ninth Circuit law provides persuasive authority. *Authentify Patent Co., LLC v. StrikeForce Techs., Inc.*, 39 F. Supp. 3d 1135, 1149 (W.D. Wash. 2014). Moreover, the court will "treat analysis of transfer on the basis of the first to file rule separately from analysis of transfer based on 1404 convenience factors." *Microchip Tech., Inc. v. United Module Corp.*, No. CV-10-04241-LHK, CV-10-05196-LHK, CV-10-05290-LHK, CV-11-00430-LHK, 2011 WL 2669627, at *7 (N.D. Cal. July 7, 2011).

suit evidences bad faith, is an anticipatory suit, or exhibits forum shopping. *Inherent.com v. Martindale-Hubbell*, 420 F. Supp. 2d 1093, 1097 (N.D. Cal. 2006).

In *Futurewei Technologies, Inc. v. Acacia Research Corp.*, the patent holders had sued the alleged infringers in the Eastern District of Texas for various infringement counts. 737 F.3d at 706. The next day, the alleged infringers brought suit in the Central District of California, seeking declaratory judgments of non-infringement and invalidity of the patents at issue, as well as asserting various other counts of tort liability against the patent holders. *Id.* The Federal Circuit held that the district court properly invoked the first-to-file rule to dismiss the declaratory judgment counts of non-infringement and invalidity concerning the patents already in litigation in Texas. *Id.* at 707.

Here, as in *Futurewei*, there is a pending patent infringement suit in the Central District of California, filed on March 2, 2017. *See Red.com, Inc.*, No. 8:17-cv-00382-CJC-KES, Compl. The patent infringement suit involves three of the four parties in this suit: Red.com, Inc. brought the suit against Jinni Tech and Mr. Royce. *See id.*, Compl. ¶¶ 3-5. The patent infringement suit also raises substantially similar issues as the declaratory judgment claims do here: the validity and potential infringement of Patent '385. *Compare id.*, Compl. ¶¶ 43-51, *with* (FAC ¶¶ 184-88). The declaratory judgment sought here was brought two months after the patent infringement suit was initiated.[10] (*See generally* FAC.) Thus, as in *Futurewei*, the court concludes that the

---

[10] The original complaint, which did not assert any patent-related claims, was filed before the patent infringement suit. (*See generally* Compl.) However, Plaintiffs do not argue—and the court has found no case law—disqualifying the first-to-file rule as long as the late claims are tacked on to another, earlier-filed suit. *See* Resp. at 15-16.

first-to-file rule applies to Plaintiffs' patent claims for declaratory judgment. The court exercises its discretion to dismiss the declaratory judgment claims.

Plaintiffs do not mention the exceptions to the first-to-file rule, and understandably so, because none of the exceptions apply here. The declaratory judgment claims—the later-filed claims—have not progressed further than the patent infringement suit has. To the contrary, the patent infringement suit has already passed the motion to dismiss stage *Red.com, Inc.*, No. 8:17-cv-00382-CJC-KES, Order on MTD, and the scheduling order for the remainder of the case has been set, *id.*, Dkt. #52. Nor is there any evidence that the patent infringement suit was anticipatory, brought in bad faith, or an attempt at forum shopping.

Instead, Plaintiffs' only argument is that the patent infringement case is without merit. *See* Resp. at 15-16. Plaintiffs highlight how the infringement complaint was filed before the patent even issued, and thus predicts that "the only proper remedy is for the Central District of California to dismiss Red's patent infringement claim." *See id.* at 15. But the Central District of California has since rejected this argument. It concluded that "[the] '385 patent had issued before the filing of the FAC, which absolved any ripeness concerns regarding [the] patent infringement claim." *Red.com, Inc*, No. 8:17-cv-00382-CJC-KES, Order on MTD at 14. And notwithstanding the Central District of California's order, this court is not equipped to determine the merit of a complaint that is not before it, nor is the validity of the first-filed suit a recognized exception to the first-to-file rule. *See Guthy-Renker*, 179 F.R.D. at 269-70. Therefore, the court finds no reason to deviate from the first-to-file rule.

In sum, the court dismisses the patent-related declaratory judgment counts. This dismissal fulfills both purposes behind the first-to-file rule: decreasing the burden on the judiciary by eliminating duplicative litigation and preventing the possibility of conflicting judgments on substantially identical patent issues brought by substantially identical parties. *See Wallerstein*, 967 F. Supp. 2d at 1292-93.

2. <u>Non-Patent Claims</u>

The general venue statute 28 U.S.C. § 1391(b) applies to the Lanham Act and state law claims brought by Plaintiffs. This general venue statute states, in part, that an action "may be brought in . . . a judicial district where any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391(b). A corporate entity "shall be deemed to reside . . . in any judicial district in which such defendant is subject to the court's personal jurisdiction." *Id.* § 1391(c).

As discussed above, both Red.com, Inc. and Red.com, LLC are subject to the court's personal jurisdiction. *See supra* § III.B. Accordingly, both are residents of the State of Washington for venue purposes. *See* 28 U.S.C. § 1391(b). Defendants' argument to the contrary relies largely on the minimal contacts that both Red.com, Inc. and Red.com, LLC have with Washington. (*See* MTD at 18-19.) Because the court has determined that the court properly has personal jurisdiction over the Defendants, notwithstanding these minimal contacts, this argument cannot prevail. Accordingly, venue is proper for the non-patent claims subject to 28 U.S.C. § 1391(b).

The only remaining question is whether, despite proper venue, the court should transfer these non-patent claims to the Central District of California. Defendants

1  advocate for transfer under 28 U.S.C. § 1404(a) and bear the burden of showing that such

2  a transfer is appropriate.  *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255-56 (1981).

3  To support a §1404(a) motion to transfer, the moving party must first show that the suit

4  could have been brought in the transferee venue.  *Hoffman v. Blaski*, 363 U.S. 335, 344

5  (1960); *A.J. Indus., Inc. v. U.S. Dist. Ct. for the Cent. Dist. of Cal.*, 503 F.2d 384, 386

6  (9th Cir. 1974).  Plaintiffs' sole argument against transfer is that "the Central District of

7  California lacks personal jurisdiction over either Jinni Tech or Bruce Royce and venue is

8  improper."  (Resp. at 17-20.)  But the Central District of California has since held to the

9  contrary.  *Red.com, Inc.*, No. 8:17-cv-00382-CJC-KES, Order on MTD at 6-13, 15.

10  Indeed, it declined to transfer venue to the Western District of Washington.  *Id.*, Order on

11  MTD at 17.  Thus, Defendants satisfy the threshold requirement of showing that the

12  action could have been brought in the Central District of California.  *See Hoffman*, 363

13  U.S. at 344.

14       Once this threshold requirement has been established, the court considers whether

15  the convenience of the parties and witnesses and the interests of justice favor transfer.

16  *See* 28 U.S.C. § 1404(a).  The Ninth Circuit instructs courts to apply a nine-factor

17  balancing test to determine whether to transfer a case.  *Jones v. GNC Franchising, Inc.*,

18  211 F.3d 495, 498 (9th Cir. 2000).  The test balances the following factors:  "(1) the

19  location where the relevant agreements were negotiated and executed, (2) the state that is

20  most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the

21  respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's

22  cause of action in the chosen forum, (6) the differences in the costs of litigation in the two

forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, . . . (8) the ease of access to sources of proof," and (9) the public policy considerations of the forum state. *Id*. at 498-99. The decision to transfer is ultimately left to the sound discretion of the district court and must be made on an "individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).

Here, the court concludes that the balance of the factors weigh against transferring the non-patent claims. Because the events underlying the non-patent claims largely occurred over the internet, the first and fifth factors, which look at the location of relevant events, are largely neutral. *See Silver Valley Partners, LLC. v. DeMotte*, No. C05-5590RBL, 2006 WL 2711764, at *6 (W.D. Wash. Sept. 21, 2006). Neither party produces evidence regarding factor seven, which concerns the court's subpoena power; thus, the court finds factor seven to be irrelevant. *See id.* at *4 (concluding factor seven to be irrelevant when none of the witnesses are likely to be unwilling to testify). The court now considers each of the remaining factors in turn.

### a. State Most Familiar with the Governing Law

Plaintiffs bring various claims that require interpretation of Washington law. (FAC ¶¶ 126-82.) Five counts assert violations of various aspects of Washington common law. (*Id.* ¶¶ 126-42, 157-82.) Two other counts allege violations of the Washington Consumer Protection Act. (*Id.* ¶¶ 143-56.) The court recognizes, as Defendants argue, that federal courts are equally equipped to apply distant state laws when the law is not complex. (MTD at 23); *see, e.g.*, *Barnstormers, Inc. v. Wing*

*Walkers, LLC*, No. 09cv2367 BEN (RBB), 2010 WL 2754249, at *3 (S.D. Cal. July 9, 2010) (stating that a federal court in Texas would be equally adept at applying California law related to unfair competition claims). But because the majority of Plaintiffs' claims implicate Washington state law, the court concludes that this factor is neutral.

### b. Plaintiff's Choice of Forum

Plaintiffs undisputedly indicate the Western District of Washington as their preferred forum, not only by choosing this forum to file its complaint but also by tailoring their complaint to include several Washington law claims. (*See generally* FAC.) This choice of forum receives substantial deference, and Defendants must "make a strong showing of inconvenience" to upset that choice. *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). Although less deference is accorded a plaintiff's choice when the action has little connection with the chosen forum, *Pedigo Prods., Inc. v. Kimberly-Clark Worldwide, Inc.*, No. 12-5502BHS, 2013 WL 364814, at *3 (W.D. Wash. Jan. 30, 2013), the postings on social media at issue in this case have as much connection with this forum as they have with any other. Moreover, RED's alleged false advertising appears on products that are sold within the forum. (*See* Whitaker Decl. ¶ 4, Ex. B.) Because, as discussed below, Defendants have not made the requisite "strong showing of inconvenience," *see Decker Coal*, 805 F.2d at 843, this factor weighs heavily against transfer.

### c. Parties' Contacts with the Forum

This factor focuses on the parties' contacts with either forum. Defendants maintain that they "have no known business connection with the Western District of

Washington." (MTD at 22.) However, as discussed above, this is not entirely accurate. *See supra* § III.B.2. Red.com, Inc. was incorporated in Washington, and recently, both Red.com Inc. and Red.com, LLC engaged Washington law to undergo conversion. (FAC ¶ 20; Whitaker Decl. ¶ 3, Ex. A.) Red.com, Inc. has owned property in this forum, has at least one employee here, and maintains at least one authorized dealer here that conducts RED-sponsored events and sells the very product implicated in one of the false advertising claims. (Land Decl. ¶¶ 5, 7, Ex. B; Whitaker Decl. ¶¶ 4-6, Exs. B-D.) It is true that Plaintiffs do not have significant contacts with Washington, though there is limited evidence that they have any contacts with California either. Defendants, as they state repeatedly in their briefing, have significant contacts with California. Thus, the court concludes that this factor is neutral and at best weighs slightly towards transfer.

> d. *Differences in the Cost of Litigation*

When considering the difference in cost between two forums, courts disfavor transferring venue when "transfer would merely shift rather than eliminate" costs and inconvenience. *Decker Coal*, 805 F.2d at 843. The relative cost analysis focuses primarily on the venue's proximity to witnesses. *See Silver Valley Partners*, 2006 WL 2711764, at *4. Defendants identify Mr. Land and other employees of Red.com, LLC as potential witnesses in this suit, all of whom reside and work in California. (MTD at 23; Land Decl. ¶¶ 7, 13-14.) Defendants further imply that Red.com, LLC's "customers and suppliers located worldwide" may be called as witnesses (*see* MTD at 23), but this contention does not shift this factor one way or the other because transfer to California

//

would only "shift rather than eliminate" travel costs for these potential witnesses.  *See Decker Coal*, 805 F.2d at 843.

Plaintiffs do not identify any potential witnesses.  (*See generally* Resp.)  Presumably, because Mr. Royce and Jinni Tech employees reside abroad, the costs of litigation would not be eliminated for Plaintiffs even if the action were transferred from Washington to California; neither venue has close proximity to these potential witnesses.  However, because Defendants identify some witnesses that are located in the transferee forum, this factor slightly favors transfer.

      *e.  Ease of Access to Sources of Proof*

This factor focuses on the location of witnesses, documentary evidence, and inventory to be inspected, if any.  *See Jones*, 211 F.3d at 499; *Silver Valley Partners*, 2006 WL 2711764, at *4.  The court notes that the ability to transfer documents electronically with relative ease and little expense may lessen the importance of this factor with respect to documentary evidence.  The ease of access is especially evident with regards to the allegedly false statements posted on the Internet because such statements are virtual and thus accessible in any forum.

Another consideration specific to this case is the fact that the Central District of California has an ongoing suit involving the same parties.  But the non-patent claims here have almost no overlap with the patent infringement claims asserted there.  *Compare* (FAC ¶¶ 107-82, *with id.* ¶¶ 183-88); *Red.com, Inc.*, No. 8:17-cv-00382-CJC-KES, Compl.  There is no indication that the claims concerning the '385 patent would require the same documents, witness testimony, or evidence as the false advertising, unfair

competition, and tortious interference claims concerning Mr. Land's online comments.
Indeed, besides involving the same parties, the two categories of claims are largely
unrelated. Thus, there is no evidence that consolidating the non-patent claims with the
patent infringement suit would lessen what evidence would need to be produced by either
party. Nevertheless, in light of the location of some witnesses, the court concludes that
this factor weighs only slightly in favor of transfer.

### f. Public Policy Considerations of the Forum State

Public policy factors include the "local interest in having localized controversies
decided at home" and deciding cases "where the claim arose." *Decker Coal*, 805 F.2d at
843. Additionally, states have an interest in providing a forum for their injured residents.
*Hansen v. Combined Transp., Inc.*, No. C13-1298RSL, 2013 WL 5969863, at *4 (W.D.
Wash. Nov. 7, 2013). Here, Washington has significant interest in protecting its
consumers from the allegedly false advertising perpetrated by RED in its forum.
(Whitaker Decl. ¶ 6, Ex. D (identifying in Washington the sale of products that are
allegedly falsely advertised).) Moreover, at the time of the alleged misconduct, Red.com,
Inc. was a Washington corporation. (*See* FAC ¶ 20.) And lastly, the reach of virtual
statements is not limited by traditional physical boundaries, and thus it is at least
conceivable that Washington consumers of both parties' products were affected by Mr.
Land's statements. Therefore, the court finds that this factor weighs against transfer.

### g. Balancing the Jones Factors

Balancing the above factors, the court finds that Defendants have not met their
burden of demonstrating that transfer of the non-patent claims is appropriate. Two of the

above factors—Plaintiffs' choice of forum and public policy considerations—weigh against transfer.  Four factors in total—familiarity with the governing law, contacts with the forum, location of the relevant agreement, and contacts relating to the cause of action to the chosen forum state—are neutral.  And critically, in a case where the disputed issue revolves around online statements made on social media platforms, none of the case-related contacts or documentary evidence are any more strongly tied to California than they are to Washington.  Although the location of Mr. Land and RED employees slightly favor transfer, that is not the "strong showing of inconvenience" necessary to upset the plaintiff's choice of forum.  *See Decker Coal*, 805 F.2d at 843.  Accordingly, the court finds that transfer of the non-patent claims pursuant to 28 U.S.C. § 1404 is unwarranted.

In sum, pursuant to the first-to-file rule, the court dismisses the patent claims seeking declaratory judgment.  However, the court declines to transfer the remaining non-patent claims, as venue is proper here and the balance of the *Jones* factors do not counsel transfer.  Because the court retains the non-patent claims that are the subject of Defendants' 12(b)(6) motion to dismiss, the court proceeds to address that motion.[11]

//

//

//

//

---

[11] The court acknowledges that Defendants also challenge the patent claims for failure to state a claim against Red.com, LLC.  (*See* MTD at 8.)  However, because the court is dismissing those claims, it refrains from expressing any opinion on the merits of Defendants' 12(b)(6) arguments regarding the patent claims.

**D.  Motion to Dismiss for Failure to State a Claim**

Defendants argue that "all claims"[12] must be dismissed because Plaintiffs rely only on: (1) statements made by Mr. Land, a non-party to this lawsuit, whose comments cannot be imputed to Red.com, Inc.; or (2) "social media posts made by individuals unaffiliated with the Red.com entities."[13]  (MTD at 5.)  Thus, Defendants challenge Plaintiffs' claims for a lack of a cognizable legal theory, and not on the grounds that any individual claim failed to allege sufficient facts.  *See Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011).  The court first reviews the legal standard for dismissal under Rule 12(b)(6) and then addresses each argument for dismissal in turn.[14]

1.  Legal Standard

Dismissal for failure to state a claim "is proper if there is a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."

---

[12] Contrary to Defendants' representation, not all claims are predicated on statements by Mr. Land or other individuals.  For instance, the false advertising count alleges that Defendants themselves included misstatements or misleading statements in advertising certain products.  (FAC ¶ 109.)  Because this count does not rely on statements made by Mr. Land or other individuals, the court assumes that Defendants do not challenge the false advertising count.  (*See* FAC ¶¶ 107-15; Resp. at 14-15.)

[13] Defendants also maintain that all claims against Red.com, LLC should be dismissed because all acts occurred before Red.com, LLC was formed on March 31, 2017.  (MTD at 5, 7.)  The court rejects this argument.  As discussed above, Red.com, LLC is not a wholly separate entity from Red.com, Inc.  *See supra* § III.B.2.b.  Rather, because Red.com, LLC was the surviving entity after conversion, any liability incurred by Red.com, Inc. continues to be enforceable against Red.com, LLC.  *See* RCW 23B.09.050(b)(2).  Thus, it is no defense that Red.com, LLC was formed after the allegedly harmful acts occurred.

[14] Defendants contend that "all claims" rely on statements made by Mr. Land and other individuals but do not identify which claims specifically rely on which statements.  (*See generally*, MTD; Reply.)  For the sake of clarity, the court identifies the counts involving the respective statements in its analysis.

*Conservation Force*, 646 F.3d at 1242 (internal quotation marks omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Mere conclusory statements" or "formulaic recitation[s] of the elements of a cause of action," however, "are not entitled to the presumption of truth." *Chavez v. United States*, 683 F.3d 1102, 1108 (9th Cir. 2012) (citing *Twombly*, 550 U.S. at 555).

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court construes the complaint in the light most favorable to the nonmoving party. *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005). The court must accept all well-pleaded facts as true and draw all reasonable inferences in favor of the plaintiff. *Wyler Summit P'ship*, 135 F.3d at 661. On a motion to dismiss, the court may consider the pleadings, documents attached to the pleadings, documents incorporated by reference in the pleadings, or matters of judicial notice. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (citing *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002)).

2. Mr. Land's Statements

Six of the asserted claims stem from Mr. Land's statements on various social media platforms. (FAC ¶¶ 116-25, 126-34, 135-42, 143-49, 165-73, 174-82 (Counts 2, 3,

4, 5, 8, and 9).)  Defendants acknowledge that "Mr. Land was a corporate officer of Red.com, Inc. at the time he posted his purported social media comments," but maintain that "these statements cannot be reasonably imputed to Red.com, Inc."  (MTD at 7-8.) Plaintiffs, on the other hand, assert that Defendants are "at least vicariously liable for statements made by its own President, Jarred Land."  (Resp. at 11-12.)  The court agrees with Plaintiffs and thus denies Defendants' 12(b)(6) motion on this ground.

"[T]he employer will be held vicariously liable if 'the employee was acting within the scope of his employment.'"  *Robel v. Roundup Corp.*, 59 P.3d 611, 620 (Wash. 2002) (quoting *Dickinson v. Edwards*, 716 P.2d 814, 820 (Wash. 1986)).  The scope of employment inquiry looks at "whether the employee was, at the time, engaged in the performance of the duties required of him by his contract of employment, or by specific direction of his employer; or . . . whether he was engaged at the time in the furtherance of the employer's interest."  *Rahman v. Washington*, 246 P.3d 182, 184 (Wash. 2011), *overruled on other grounds by* 2011 Wash. Legis. Serv. Ch. 82.  This inquiry focuses on "the benefit to the employer of the employee's liability-causing conduct."  *Evans v. Tacoma Sch. Dist. No. 10*, 380 P.3d 553, 559 (Wash. Ct. App. 2016); *see also Dickinson*, 716 P.2d at 819 ("In following this test we have emphasized the importance of the benefit to the employer[.]").  On the other hand, an act is outside the scope of employment if it is far beyond or too little actuated by a purpose to serve the employer.  *See, e.g.*, *Smith v. Scared Heart Med. Ctr.*, 184 P.3d 646, 542-43 (Wash. Ct. App. 2008).

In *Etherage v. United States*, No. C11-5091BHS, 2013 WL 1499055 (W.D. Wash. 2013), the court considered whether various allegedly slanderous emails sent by an

employee could be vicariously attributed to the employer. *Id.* at \*3-4. The court found that the employee was acting within the scope of his employment for three reasons. *Id.* at \*3. First, the substance of the emails, which detailed concerns relating to the operation of a company project, fell within the employee's job functions. *Id.* at \*4. Second, the emails were sent "via [the employee's] work email, from his work computer, during the work day, and concerned [work-related tasks]." *Id.* Lastly, the email served the employer's interests by raising concerns of how a project was being run. *Id.* Thus, the court concluded that the employee's actions "were not far beyond or too attenuated to serve the [employer's] purpose." *Id.*

Similarly, Plaintiffs sufficiently allege that Mr. Land was acting in the scope of his employment when making the allegedly harmful statements. First, Plaintiffs have adequately pleaded that the substance of the postings fell well within Mr. Land's duties as President of the company. The statements defended RED products and directly dissuaded consumers from purchasing a competitor product—the JinniMag—by labeling it as unlawful. (*See* FAC ¶ 68, 75, 81-82.) They also directly expressed disapproval of consumers who were contemplating purchasing the JinniMag. (*See id.* ¶ 82.) At one point, Mr. Land even invoked his powers as the Defendants' President, threatening to "shut RED completely down . . . [i]f stealing each other's [products] suddenly is deemed acceptable." (*Id.* ¶ 75.) Thus, as in *Etherage*, the complaint sufficiently alleges that the substance of the allegedly tortious communications fell within Mr. Land's job functions. *See* 2013 WL 1499055, at \*4.

//

Second, Plaintiffs adequately plead that the postings were made within the limits of the workplace.  The complaint details that Mr. Land made the statements on forums that are commonly used for RED's benefit, including reduser.net and Facebook groups consisting of RED product users.[15]  (FAC ¶ 23 ("Mr. Land controls the postings on reduser.net and runs that website for . . . the benefit of RED."); *see also id.* ¶¶ 44-45, 66, 70.)  Indeed, the complaint alleges that RED routinely utilizes these same forums to market its products.  (*Id.* ¶ 43.)  Although the complaint is silent on whether these postings were made during the workday, it is enough at this stage that the forums in which these statements were published are well within the limits of where Defendants conduct business.

Lastly, and perhaps most critically, Plaintiffs adequately allege that Mr. Land's statements served Defendants' interests.  The court can reasonably infer that, just as the employee in *Etherage* benefited his employer by communicating the failures of a project, Mr. Land's statements benefited RED.  *See* 2013 WL 1499055, at *4.  The complaint states that Mr. Land depicted the JinniMag as "not legit," "not certified," and "not endorsed," thus questioning the quality and functionality of the product.  (FAC ¶ 68.)  He further paints JinniTech as "some random company" that "hack[ed] and duplicate[d] our IP and our firmware," directly accusing JinniTech of committing "[c]opyright

---

[15] Defendants maintain that "there is no indication in the Amended Complaint that the reduser.net forum exists for the sole purpose of promoting Red's products."  (Reply at 11.)  But Plaintiffs do not need to show that promotion of RED products is the only purpose behind reduser.net, but merely a common use of the forum.  The complaint sufficiently pleads that latter fact.  (*See, e.g.*, FAC ¶¶ 23, 43, 50-51.)

infringement, [t]rademark violations, and IP theft." (*Id.* ¶ 75.)  These accusations could plausibly serve to discourage consumers from interacting with JinniTech at all.  Finally, the complaint details how Mr. Land responded to a user who expressed interest in "pick[ing] up a few [JinniMags]" (*id.* ¶ 80) by disparaging the user for "sitting there telling everyone [theft] is ok" (*id.* ¶ 81).  In short, by attacking a competing product, the competitor selling this product, and a potential purchaser of this product, Mr. Land's alleged statements benefited Defendants' business.

Defendants' only argument regarding vicarious liability is that "Mr. Land's status as a corporate officer of Red.com, Inc. . . . cannot be the underlying basis for imputing his statements to Red."  (Reply at 11 (citing *Melville v. Town of Adams*, 9 F. Supp. 3d 77, 104 n.11 (D. Mass. 2014).)[16]  And indeed, the court does not rely solely on Mr. Land's title.  Instead, the court concludes that Plaintiffs sufficiently allege vicarious liability based upon a myriad of factors demonstrating that his statements were made within the scope of employment.

In sum, the court concludes that Plaintiffs sufficiently plead vicarious liability and thus have stated a claim for the various counts arising from Mr. Land's allegedly tortious statements.  The court denies Defendants' Rule 12(b)(6) motion to dismiss on this basis.

//

//

//

---

[16] Defendants' reliance on *Melville* is misplaced.  First, it analyzes Massachusetts and not Washington law.  *Melville*, 9 F. Supp. 3d at 84-85.  Second, it does not articulate the law of vicarious liability, focusing instead on the difference between job-related and private-citizen speech in the First Amendment context.  *See id.* at 104.

### 3. Unaffiliated Individuals' Statements

Two of the asserted claims involve various comments made by individual users who are unaffiliated with Defendants. (*See* FAC ¶¶ 150-56, 157-64 (Counts 6 and 7).) Defendants contend that "a statement made by a 'user' of a Red product cannot be imputed to the Red.com corporation." (MTD at 7.) Defendants highlight that "Plaintiffs do not dispute that they have no basis in fact to allege the web posts of individuals unaffiliated with Red somehow reflect the views of Red." (Reply at 10-11.)

But Defendants misunderstand Plaintiffs' claims. Plaintiffs do not assert that these unaffiliated individuals' postings are "imputed" to Defendants; rather, they contend that "Defendants incited and encouraged" these individuals to commit tortious conduct. (*E.g.*, FAC ¶ 151, 158.) For example, in claim six, Plaintiffs assert that "Defendants incited and encouraged RED's users to violate Mr. Royce's privacy," in contravention of RCW 9.73.060.[17] (*Id.* ¶ 151.) In claim seven, Plaintiffs allege that "Defendants intentionally or negligently incited and encouraged RED's users to personally harass Mr. Royce." (*Id.* ¶ 158.) Thus, even if Defendants are correct that these statements cannot be imputed to them, they have not shown how Plaintiffs have failed to state a claim regarding the encouragement and incitement of these statements.

//

//

---

[17] The court notes that Chapter 9.73 primarily prohibits the recording of private communication between individuals without consent of all participants. *See* RCW 9.73.030(1). It is unclear whether recordings of private communication occurred in this case. (*See generally* FAC.) However, because Defendants do not argue for dismissal on this ground (*see* MTD), the court cannot render any conclusion as to the viability of the claim.

Accordingly, the court denies Defendants' motion to dismiss. The court emphasizes that in doing so, it makes no comment on whether Plaintiffs' incitement and encouragement claims are plausible on their face, or whether these claims have merit moving forward, because Defendants have not challenged the claims on this basis. Instead, the court merely concludes that the argument Defendants proffer misses the mark and thus will not dismiss these claims on those grounds.

In sum, the court strikes the portions of Defendants' reply that raise the forum selection clause argument. The court grants Defendants' motion to dismiss as to the patent claims, which the court dismisses pursuant to the first-to-file rule. However, the court denies the remainder of Defendants' arguments. The court finds that it has personal jurisdiction over both Red.com, Inc. and Red.com, LLC and further finds that venue is proper for the non-patent claims. The court declines to transfer those claims. Lastly, the court denies Defendants' 12(b)(6) motion to dismiss.

## IV. CONCLUSION

For the foregoing reasons, the court GRANTS in part and DENIES in part Defendants' motion to dismiss or transfer (Dkt. # 15). The court further STRIKES the portions of the reply relating to the forum selection clause argument.

Dated this 20th day of October, 2017.

JAMES L. ROBART
United States District Judge