# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| JINNI TECH LTD, et al., | CASE NO. C17-0217JLR |
| Plaintiffs, | ORDER GRANTING STAY |
| v. | |
| RED.COM, INC., et al., | |
| Defendants. | |

## I. INTRODUCTION

Before the court is Plaintiffs Jinni Tech, Ltd. ("Jinni Tech") and Bruce Royce's (collectively, "Plaintiffs") motion to stay. (MTS (Dkt. # 49).) Defendants RED.com, Inc. and RED.com, LLC (collectively, "Defendants" or "RED") oppose the motion (Resp. (Dkt. # 54)), and Plaintiffs filed a reply (Reply (Dkt. # 56)). The court has considered the parties' submissions in support of and in opposition to the motion, the

//

//

ORDER - 1

relevant portions of the record, and the applicable law. Being fully advised,[1] the court GRANTS Plaintiffs' motion to stay.

## II. BACKGROUND

The court detailed this case's factual and procedural background in its prior order on RED's motion to dismiss or transfer. (*See* 10/20/17 Order (Dkt. # 32) at 2-8.) Thus, in this order, the court recounts only the facts and procedural history salient to the instant motion.

### A. Jinni Tech and RED's Products

This case involves competing filmmaking products manufactured and sold by the parties. (*See* FAC (Dkt. # 10) ¶¶ 3-6; Answer (Dkt. # 33) ¶ 3.) RED manufactures and sells high-end, digital cameras, which are widely used by the filmmaking industry. (*See* FAC ¶ 3; Answer ¶ 3.) As part of their business, Defendants also sell the RED Mini-Mag—a memory storage device, known as a solid state drive ("SSD"), that is compatible with RED digital cameras. (FAC ¶¶ 41-42; Answer ¶¶ 17-18.) According to Plaintiffs, Defendants' President, Jarred Land, owns and operates a website called reduser.net, which hosts a forum for individual RED camera owners and others active in the cinematography industry to "share information about RED cameras and accessories." (FAC ¶¶ 23, 43-44; *see also* Answer ¶¶ 11, 20.)

//

---

[1] Neither party requests oral argument on the motion (*see* MTS at 1; Resp. at 1), and the court finds oral argument unnecessary to its disposition of the motion, *see* Local Rules W.D. Wash. LCR 7(b)(4).

Jinni Tech also manufactures and sells cinematography equipment. (*See* FAC ¶ 34.) On July 31, 2016, Jinni Tech introduced a competing SSD media accessory called the JinniMag, which it marketed as "an affordable third-party media accessory that is compatible with RED cameras." (*Id.* ¶ 38; *see id.* ¶¶ 34-37, 66-67.)

**B.     Statements Regarding Plaintiffs After the Introduction of JinniMag**

Plaintiffs allege that, after Jinni Tech introduced the JinniMag, RED made or encouraged a series of allegedly false statements about Jinni Tech. These statements insinuated that the JinniMag was a "scam," an "IP theft," and "a fake." (*Id.* ¶ 71.) Plaintiffs claim that Mr. Land accused Jinni Tech of duplicating RED's intellectual property and "describing Jinni Tech and/or Mr. Royce as a hacker, a pirate, and a thief." (*Id.* ¶¶ 72, 75.) Plaintiffs allege that numerous similar statements were made on the reduser.net forum and Facebook. (*See, e.g.*, *id.* ¶¶ 70-71c; 73, 77a-77g; 85-86c.) According to Plaintiffs, these actions damaged Mr. Royce's professional reputation and caused Mr. Royce and his family "serious emotional distress, anxiety, and stress, resulting in harm to Mr. Royce's emotional and physical health, including severe physical pain and a sleep disorder." (*Id.* ¶¶ 97-98.)

**C.     Procedural History**

Plaintiffs filed suit on February 10, 2017. (*See* Compl. (Dkt. # 1).) Their complaint alleges that Defendants falsely advertised RED's products and engaged in unfair competition, in violation of the Lanham Act, 15 U.S.C. § 1125(a). (*Id.* ¶¶ 90-108; FAC ¶¶ 107-25.) It also asserts various violations of Washington law, including product disparagement and trade libel (Compl. ¶¶ 109-15; FAC ¶¶ 126-34); tortious interference

(Compl. ¶¶ 116-22; FAC ¶¶ 135-42); intentional and negligent infliction of emotional distress (Compl. ¶¶ 136-43; FAC ¶¶ 157-64); defamation (Compl. ¶¶ 144-52; FAC ¶¶ 165-73); and portraying Plaintiffs in a false light (Compl. ¶¶ 153-61; FAC ¶¶ 174-82). Finally, the complaint alleges that Defendants violated the Washington Consumer Protection Act by engaging in unfair competition in violation of RCW 19.86 (Compl. ¶¶ 123-28; FAC ¶¶ 143-49) and violating Mr. Royce's right of privacy in contravention of RCW 9.73.060 (Compl. ¶¶ 129-35; FAC ¶¶ 150-56).

A month later, on March 2, 2017, RED.com, Inc. brought suit against Jinni Tech and Mr. Royce in the Central District of California, alleging patent infringement, trademark infringement, and other violations of federal and state law. *See generally Red.com, Inc. v. Jinni Tech, Ltd.*, No. 8:17-cv-00382-CJC-KES, Dkt. # 1 ("Compl.") (C.D. Cal.) (hereinafter, "the California case"). The complaint describes the '385 patent, owned by RED, which covers the RED SSD accessories. *Id.*, Compl. ¶ 14. It asserts that Jinni Tech and Mr. Royce "have in the past infringed and are currently infringing the '385 patent." *Id.*, Compl. ¶ 43. Jinni Tech and Mr. Royce moved to dismiss the California case on various grounds, including lack of personal jurisdiction and improper venue, and alternatively, to transfer the action to this district. *Id.*, Dkt. # 30 ("Order on MTD") at 1-2. The Central District of California denied the motion. *See generally id.*, Order on MTD.

On May 23, 2017, Jinni Tech and Mr. Royce filed an amended complaint in this suit, adding two claims seeking declaratory judgments of noninfringement and invalidity of the '385 Patent—the same patent at issue in the California case. (*See* FAC ¶¶ 183-88.)

Defendants then filed a motion to dismiss or transfer. (*See* MTD (Dkt. # 15).) The court granted Defendants' request to dismiss Plaintiffs' patent-related claims pursuant to the first-to-file rule. (*See* 10/20/17 Order at 37.) The court denied the remainder of Defendants' motion after finding that it had personal jurisdiction over RED.com, Inc. and RED.com, LLC, and that venue in this court was proper for Plaintiffs' non-patent claims. (*Id.*) The court also declined to transfer the case to the Central District of California, and denied Defendants' 12(b)(6) motion to dismiss. (*Id.*)

On November 29, 2017, the Central District of California reversed its order upholding Red.com's patent infringement suit. (*See* Whitaker Decl. (Dkt. # 37) ¶ 3, Ex. A.; *see also* 1/25/18 Order (Dkt. # 41) at 3.) On a motion for reconsideration, the California court held that "[b]ecause the '385 Patent had not issued when [RED.com] filed its Complaint, there was no justiciable case or controversy at the time of filing." (*Id.*) Accordingly, the Central District of California dismissed RED.com's patent infringement claims without prejudice. (*Id.*) Both parties immediately took action that same day. RED.com refiled a suit for infringement of the '385 Patent in the Central District of California. (*See* Whitaker Decl. ¶ 4, Ex. B; 1/25/18 Order at 3.) Plaintiffs then filed what was styled as a motion for reconsideration in this court—but in fact was a motion for relief brought pursuant to Federal Rule of Civil Procedure 60(b)—asking the court to reinstate the declaratory judgment patent claims. (*See* MFR (Dkt. # 36).) The court denied Plaintiffs' Rule 60(b) motion on numerous grounds. (*See generally* 1/25/18 Order.)

//

The California case is scheduled for trial on May 7, 2019. (MTS at 5.) This case is scheduled for trial on August 19, 2019. (Sched. Order (Dkt. # 24) at 1.)

**D.     Present Motion**

Plaintiffs now move to stay this action pending resolution of the California case. (*See* MTS at 1.) Plaintiffs claim that the issues in the California case "are intimately related, and indeed foundational to issues here." (*Id.*) In short, Plaintiffs argue that the question whether Jinni Tech has infringed on RED's patent—which is at issue in California—is central to, if not dispositive of, Plaintiffs' non-patent claims in this court. (*See generally id.*) For example, Plaintiffs allege that this court cannot determine whether RED falsely accused Plaintiffs of "stealing from RED and committing intellectual property theft" (*see, e.g.*, FAC ¶ 119c) until the Central District of California decides whether patent infringement occurred (MTS at 5). For this reason, Plaintiffs argue that the disposition of the California case will clarify the issues in this case, if not resolve this case entirely. (*Id.* at 5.) Moreover, Plaintiffs contend that if both this case and the California case proceed as scheduled, the two juries could return conflicting verdicts, leaving the Ninth Circuit in an untenable position. (*Id.* at 6.)

Conversely, RED claims that there is little overlap between the issues in the two cases, such that a resolution in the California case will not aid this court in deciding the non-patent claims. (Resp. at 8-9.) RED also asserts that Plaintiffs' true motivation in seeking a stay is not for reasons of consistency or judicial economy, but rather to avoid discovery—especially Mr. Bruce's deposition—and delay Defendants' forthcoming summary judgment motion. (*Id.* at 9-11.) Lastly, RED argues that Plaintiffs should be

judicially estopped from achieving a stay. (*Id.* at 11-13.) According to RED, Plaintiffs' current position that the two cases are linked is inconsistent with Plaintiffs' opposition to RED's motion to transfer, where Plaintiffs argued against a transfer because the two cases were distinct. (*Id.* at 11-13; *see also* MTD (Dkt. # 15); MTD Resp. (Dkt. # 21).) In the alternative, Defendants request that, if the court grants the motion to stay, the court should still allow the parties to continue discovery and allow RED to file its motion for summary judgment. (Resp. at 13.)

The court now addresses the motion.

### III. ANALYSIS

**A. The Court's Authority to Issue a Stay**

"A district court has inherent power to control the disposition of the causes on its docket in a manner which will promote economy of time and effort for itself, for counsel, and for litigants." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962). "[T]he District Court has broad discretion to stay proceedings as an incident to its power to control its own docket." *Clinton v. Jones*, 520 U.S. 681, 706-07 (1997) (citing *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). A district court may stay an action "pending resolution of independent proceedings which bear upon the case" even if the other proceedings do not control the action before the court. *Leyva v. Certified Grocers of Cali, Ltd.*, 593 F.2d 857, 863-64 (9th Cir. 1979) (citations omitted). "Indeed, where a stay is considered pending the resolution of another action, the court need not find that two cases involve identical issues; a finding that the issues are substantially similar is sufficient to support a stay." *Washington v. Trump*, No. C17-0141JLR, 2017 WL 1050354, at *4 (W.D. Wash.

Mar. 17, 2017) (citing *Landis*, 299 U.S. at 254). A stay based on independent proceedings should only be granted if "it appears likely the other proceedings will be concluded within a reasonable time in relation to the urgency of the claims presented to the court." *Leyva*, 593 F.2d at 864.

"The proponent of a stay bears the burden of establishing its need." *Clinton*, 520 U.S. at 708 (citing *Landis*, 299 U.S. at 255). "[I]f there is even a fair possibility" that the stay will damage another party, then the proponent of the stay "must make out a clear case of hardship or inequity in being required to go forward." *Landis*, 299 U.S. at 255.

**B.     The Factors the Court Considers**

In considering a stay, a district court must weigh the following competing interests: (1) "the possible damage which may result from the granting of a stay"; (2) "the hardship or inequity which a party may suffer in being required to go forward"; and (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *CMAX*, 300 F.2d. at 268 (citing *Landis*, 299 U.S. at 254-55).

   1. <u>Possible Damage Resulting from a Stay</u>

Because RED opposes the motion, the court considers any damage that may result to RED if the court imposes a stay. *See Lockyer v. Mirant Corp.*, 389 F.3d 1098, 1110 (9th Cir. 2005); *Washington*, 2017 WL 1050354, at *4. Plaintiffs argue that they are the only party that could potentially be harmed by a stay because they are effectively unable to sell the JinniMag while the cases remain pending. (MTS at 5.) RED, however, asserts that a stay will damage its ability to conduct timely and complete discovery, including

taking Mr. Bruce's deposition, preventing it from finalizing its summary judgment motion and resolving this case. (Resp. at 9-10.) Plaintiffs state that RED's issue with Mr. Bruce's deposition is a red herring—Mr. Bruce's deposition was initially delayed because Plaintiffs changed counsel, and Mr. Bruce has now agreed to appear for a deposition between October 22 and October 27. (Reply at 3.) The court finds that any damage to RED caused by a delay in proceedings would be minimal.

Although a court considering a stay should be mindful of a possible "loss of evidence, including the inability of witnesses to recall specific facts," *Clinton*, 520 U.S. at 707-08, this is not a significant concern in this case. The parties have already completed significant discovery. (*See* Resp. at 4 ("the Washington case has progressed through much of discovery and even a mediation").) And RED's chief discovery complaint—its inability to take Mr. Bruce's deposition—appears to be resolved, or will be resolved shortly. (*See* Reply at 3.) Moreover, the court's stay, as detailed below, will allow discovery to proceed on its current schedule. (*See* Sched. Order at 2 (discovery cutoff date is March 8, 2019)); *see also infra* § III.D.

RED's other concern—that it will not be able to immediately file its summary judgment motion—is not the type of damage described in *Landis*. 299 U.S. at 255. In essence, RED argues that it will suffer damage from a stay because this case will exist longer than it otherwise would. (*See* Resp. at 10.) But this is not a case where a stay would be "indefinite in nature." *See Dependable Highway Express, Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007) ("Generally, stays should not be indefinite in nature."). Rather, a stay would only minimally extend the case: the California case is

scheduled for trial on May 7, 2019, which is three months before this case's current August 19, 2019, trial date. Moreover, the purpose of the proposed stay is to help resolve the issues before this court. Even if RED were to file its summary judgment motion in the near future, it is not clear that the court could decide the motion without knowing whether patent infringement occurred. Nor is it certain that the motion would resolve this case: discovery does not close until March 2019, and Plaintiffs suggest that they would request a Rule 56(d) deferment of any summary judgment motion until relevant discovery is completed. (Reply at 4); Fed. R. Civ. P. 56(d) ("If a nonmovant shows . . . it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order.").

In short, RED does not point to any actual harm that would result from a stay, other than the general unpleasantness of being involved in a lawsuit. (*See generally* Resp.) But RED offers no authority that says involvement in litigation is itself a harm sufficient to defeat a stay.[2] (*See generally* Resp.). Courts that have denied stays have cited different and more significant harms than RED has alleged. *See, e.g.*, *Dependable Highway*, 498 F.3d at 1066 (overruling a stay that would first force a company to enter into arbitration in a foreign country when it was unclear if the company even agreed to arbitrate); *Lockyer*, 398 F.3d at 1112 (finding that a stay was inappropriate where the stay

---

[2] Although *Clinton v. Jones* asks the court to take into account a party's "interest in bringing the case to trial," this interest is tied to not delaying trial such that the parties could suffer a "loss of evidence, including the inability of witnesses to recall specific facts, or the possible death of a party." 520 U.S. at 707-08.

could allow an illegal concentration of market power and could threaten economic harm to electricity consumers). Moreover, RED's argument is undermined by the fact that it is still subject to the California case, which it initiated.

In sum, the court finds that RED will suffer minimal harm, if any, as a result of a limited stay pending resolution of the California case. *Landis*, 299 U.S. at 255.

### 2. Possible Hardship or Inequity Resulting from Going Forward

Because Plaintiffs move for the stay, the court considers any hardship or inequity that they might suffer as a result of going forward. *See Lockyer*, 389 F.3d at 1110; *Washington*, 2017 WL 1050354, at *4. Here, the court finds that denying Plaintiffs' motion would not subject them to hardship or inequity. Plaintiffs would have to engage in discovery and respond to RED's summary judgment motion, "but 'being required to defend a suit, without more, does not constitute a clear case of hardship or inequity' for purposes of a stay." *Washington*, 2017 WL 1050354, at *4 (quoting *Lockyer*, 389 F.3d at 1112). This is all the more so because Plaintiffs initiated this suit. However, should the two juries reach inconsistent rulings, both parties could experience hardship or inequity. *See Hawai'i v. Trump*, No. CV 17-00050 DKW-KJM, 2017 WL 536826, at * 3 (D. Haw. Feb. 9, 2017). Therefore, the court considers this factor either neutral or slightly favoring a stay.

### 3. The Orderly Course of Justice

Finally, the court considers "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *CMAX*, 300 F.2d. at 268 (citing *Landis*, 299 U.S. at

254-55).  Plaintiffs argue that the issues in the California case "are intimately related, and indeed foundational to issues here."  (MTS at 1.)  RED claims the opposite.  (*See* Resp. at 8-11.)  The court finds that there is a significant overlap of the issues such that a limited stay pending resolution of the California case would benefit the orderly course of justice.

As explained above, the California case relates to whether Jinni Tech or Mr. Royce infringed RED's rights by manufacturing and selling the JinniMag.  *See supra* § II.C.  The present case is in large part concerned with whether comments attributable to RED, which accuse Jinni Tech and Mr. Royce of stealing RED's intellectual property, are potentially actionable forms of disparagement or permissible truthful statements.  Indeed, all of Plaintiffs' claims ask this court to consider to some extent whether patent infringement occurred.  (*See* FAC ¶¶ 119a-d ("These acts include false and disparaging statements:  a. identifying Jinni Tech and JinniMag as a scam, b. accusing Jinni Tech of making false claims and committing violations, c. accusing Jinni Tech of stealing from RED and committing intellectual property theft, and d. labeling Jinni Tech as a criminal, a hacker, and a pirate."); *see also* ¶¶ 109d; 128a-d; 138; 144; 151; 158; 166-68; 175-77.)

Moreover, some of RED's affirmative defenses require the court to know whether Plaintiffs committed patent infringement.  For example, RED raises the affirmative defense that it was telling the truth when it purportedly said that Plaintiffs' stole its intellectual property.  (Answer ¶ 1.28.)  But it will be difficult for the court to determine whether RED's alleged statements are truthful if the court does not know whether Plaintiffs infringed RED's intellectual property rights.  And whether intellectual property infringement occurred is strictly the province of the Central District of California.  (*See*

10/20/17 Order at 37 (dismissing Plaintiffs' patent claims under the first-to-file rule); 1/25/18 Order at 7 (same).)

For all these reasons, the court finds that a stay will promote judicial economy. Even though the issues in the California case are not identical to the issues here, the court finds that resolution of the California case will help decide the factual and legal issues before the court. *Lockyer*, 398 F.3d at 1113. At the very least, the California case will resolve the technical patent questions that will likely arise in this case. *See CMAX*, 300 F.2d at 269 (granting a stay pending the resolution of administrative proceedings that would help develop evidence that related to highly technical tariff questions that were likely to arise in the district court case). Moreover, granting the stay will reduce the risk of inconsistent jury verdicts—*e.g.*, the California jury finds that no patent infringement occurred, while the Washington jury finds that no defamation occurred because Plaintiffs did, in fact, infringe RED's patent.

Therefore, the court finds that a stay pending resolution of the California case will contribute to the orderly course of justice by simplifying the issues, proof, and questions of law in the present case.

**C.  Judicial Estoppel**

Judicial estoppel "is an equitable doctrine invoked by a court at its discretion." *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990) (citing *Religious Tech. Ctr. v. Scott*, 869 F.2d 1306, 1311 (9th Cir. 1989)). The doctrine "is invoked to prevent a party from changing its position over the course of judicial proceedings when such positional changes have an adverse impact on the judicial process." *Id.* It "is most commonly

10/20/17 Order at 37 (dismissing Plaintiffs' patent claims under the first-to-file rule); 1/25/18 Order at 7 (same).)

For all these reasons, the court finds that a stay will promote judicial economy. Even though the issues in the California case are not identical to the issues here, the court finds that resolution of the California case will help decide the factual and legal issues before the court. *Lockyer*, 398 F.3d at 1113. At the very least, the California case will resolve the technical patent questions that will likely arise in this case. *See CMAX*, 300 F.2d at 269 (granting a stay pending the resolution of administrative proceedings that would help develop evidence that related to highly technical tariff questions that were likely to arise in the district court case). Moreover, granting the stay will reduce the risk of inconsistent jury verdicts—*e.g.*, the California jury finds that no patent infringement occurred, while the Washington jury finds that no defamation occurred because Plaintiffs did, in fact, infringe RED's patent.

Therefore, the court finds that a stay pending resolution of the California case will contribute to the orderly course of justice by simplifying the issues, proof, and questions of law in the present case.

**C.  Judicial Estoppel**

Judicial estoppel "is an equitable doctrine invoked by a court at its discretion." *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990) (citing *Religious Tech. Ctr. v. Scott*, 869 F.2d 1306, 1311 (9th Cir. 1989)). The doctrine "is invoked to prevent a party from changing its position over the course of judicial proceedings when such positional changes have an adverse impact on the judicial process." *Id.* It "is most commonly

10/20/17 Order at 37 (dismissing Plaintiffs' patent claims under the first-to-file rule); 1/25/18 Order at 7 (same).)

For all these reasons, the court finds that a stay will promote judicial economy. Even though the issues in the California case are not identical to the issues here, the court finds that resolution of the California case will help decide the factual and legal issues before the court. *Lockyer*, 398 F.3d at 1113. At the very least, the California case will resolve the technical patent questions that will likely arise in this case. *See CMAX*, 300 F.2d at 269 (granting a stay pending the resolution of administrative proceedings that would help develop evidence that related to highly technical tariff questions that were likely to arise in the district court case). Moreover, granting the stay will reduce the risk of inconsistent jury verdicts—*e.g.*, the California jury finds that no patent infringement occurred, while the Washington jury finds that no defamation occurred because Plaintiffs did, in fact, infringe RED's patent.

Therefore, the court finds that a stay pending resolution of the California case will contribute to the orderly course of justice by simplifying the issues, proof, and questions of law in the present case.

**C.  Judicial Estoppel**

Judicial estoppel "is an equitable doctrine invoked by a court at its discretion." *Russell v. Rolfs*, 893 F.2d 1033, 1037 (9th Cir. 1990) (citing *Religious Tech. Ctr. v. Scott*, 869 F.2d 1306, 1311 (9th Cir. 1989)). The doctrine "is invoked to prevent a party from changing its position over the course of judicial proceedings when such positional changes have an adverse impact on the judicial process." *Id.* It "is most commonly

applied to bar a party from making a factual assertion in a legal proceeding which directly contradicts an earlier assertion made in the same proceeding or a prior one." *Id.*

Here, RED argues that Plaintiffs should be judicially estopped from achieving a stay because Plaintiffs' current position contradicts their prior opposition to RED's motion to transfer in which they argued against a transfer because the two cases were distinct and should not be tried together. (Resp. at 11-13; *see also* MTD; MTD Resp.) The court disagrees.

RED mischaracterizes Plaintiffs prior opposition to RED's motion to transfer this case to the Central District of California. Plaintiffs did not oppose transfer because the non-patent issues are unrelated to the patent claims in the California case. Rather, Plaintiffs opposed transfer by claiming that the Central District of California lacked personal jurisdiction over Plaintiffs and was an improper venue for the patent and non-patent claims. (*See* MTD Resp. at 18-22.) Moreover, Plaintiffs attempted to try all the claims together when they moved to transfer the California case to this district. *See generally Red.com, Inc. v. Jinni Tech, Ltd.*, No. 8:17-cv-00382-CJC-KES, Order on MTD.

The court finds that Plaintiffs have not changed their position during this litigation or contradicted their previous assertions, certainly not in a way that has had "an adverse impact on the judicial process." *Russell*, 893 F.2d at 1037. Therefore, the court DENIES Defendants' request to dismiss Plaintiffs' motion on the basis of judicial estoppel.

//

//

### D. Parameters of the Stay

The general policy favors "stays of short, or at least reasonable, duration." *Dependable Highway*, 498 F.3d at 1067. A court should articulate the limits of its stay. *See Landis*, 299 U.S. at 257. "When once those limits have been reached, the fetters should fall off." *Id.*

Here, Plaintiffs request a stay pending resolution of the trial in the California case. (MTS at 1.) The court finds that this request is reasonable. The California case is scheduled for trial on May 7, 2019, which is three months before this case's current August 19, 2019, trial date. Therefore, except for matters related to discovery, the court stays this case until the proceedings before the Central District of California are complete. During this stay, however, the parties must continue conducting discovery according to the current scheduling order. (*See generally* Sched. Order.) The discovery cutoff date of March 8, 2019, remains in effect, as does the deadline for filing motions related to discovery. (*See id.* at 2.); *cf. CMAX*, 300 F.2d at 269 (granting a stay in a case where all discovery proceedings had concluded, but allowing the parties to apply to the court for further discovery during the stay if necessary). This stay will permit the court to conserve resources and benefit from the California case's disposition of the patent claims. This limited stay, which addresses Defendants' concerns about completing discovery, will work minimal hardship, if any, on the parties, and will guard against the risk of inconsistent rulings.

Within fourteen (14) days of completion of the proceedings before the Central District of California, the parties shall file a joint status report, briefly outlining the

resolution of the California case and proposing a new case schedule. In addition, should circumstances otherwise change such that lifting the stay is warranted, either party may move to lift the stay. Once the stay is lifted, the court will enter a new scheduling order as soon as practicable.

## IV. CONCLUSION

For the foregoing reasons, the court GRANTS Plaintiffs' motion to stay as described in this order. (Dkt. # 49.)

Dated this 26th day of October, 2018.

_____
JAMES L. ROBART
United States District Judge