UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JINNI TECH, LTD., et al.,

Plaintiffs,

v.

RED.COM, INC., et al.,

Defendants.

CASE NO. C17-0217JLR

ORDER GRANTING DEFENDANTS' THIRD MOTION FOR SUMMARY JUDGMENT

## I. INTRODUCTION

Before the court is Defendants RED.com, Inc. and RED.com, LLC's (collectively, "RED") third motion for summary judgment. (Mot. (Dkt. # 119); *see also* Reply (Dkt. # 123).) Plaintiffs Jinni Tech, Ltd. ("Jinni Tech") and Bruce Royce (collectively, "Plaintiffs") oppose RED's motion. (Resp. (Dkt. # 120).) The court has considered the motion, all submissions filed in support of and in opposition to the motion, the relevant

//

//

portions of the record, and the applicable law. Being fully advised,[1] the court GRANTS RED's third motion for summary judgment.

## II. BACKGROUND

This case returns to the court on remand from the Ninth Circuit Court of Appeals. (*See* 9th Cir. Mem. (Dkt. # 112); Mandate (Dkt. # 115).) Below, the court sets forth the factual and procedural background relevant to the instant motion.

### A. Factual Background

#### 1. The Mini-Mag and JinniMag

RED manufactures high-end digital cameras used to create motion pictures. (*See* 11/14/19 Land Decl. (Dkt. # 80) ¶ 2.) Its president is Jarred Land. (*Id.* ¶ 1.) RED claims to produce an "ecosystem comprised of everything from the image capture at the sensors through the camera and its processes to generate and output compressed RAW image files to storage media." (*See id.* ¶ 2.) As part of this "ecosystem," RED produces solid-state drives ("SSDs") that RED markets as "Mini-Mags." (*Id.*) The Mini-Mags store the camera's digitally compressed RAW recordings until they can be downloaded onto computers for movie post-production. (*See id.*; 11/14/19 Rankin Decl. (Dkt. # 81) ¶ 2, Ex. 1 ("RED Dep.") at 103:8-104:1.) RED claims that its cameras are designed such that without RED firmware in a connected SSD (such as a Mini-Mag), the RED camera's operating software system cannot properly communicate with a memory card and thus the system will not function. (*See* RED Dep. at 42:16-44:8; 11/14/19 Land Decl. ¶ 3.)

[1] Neither party requests oral argument (*see* Mot. at 1, Resp. at 1), and the court finds oral argument unnecessary to its disposition of the motion, *see* Local Rules W.D. Wash. LCR 7(b)(4).

RED further asserts that its memory devices, including the Mini-Mag, are covered by the claims of U.S Patent No. 9,596,385. (11/14/19 Land Decl. ¶ 7; *see also* 12/13/19 Land Decl. (Dkt. # 88) ¶ 3 (stating RED filed its patent application in 2016).)

In 2016, Mr. Royce's company, Jinni Tech, launched for sale an SSD designed for use with RED's cameras that it called the "JinniMag." (*See* 12/06/19 Royce Decl. (Dkt. # 86) ¶ 2.) On July 31, 2016, Jinni Tech posted a "coming soon" message on the "RED Scarlet-W Facebook group" in which it described the JinniMags as "Affordable, Fully Compatible RED Mags." (*See* FAC (Dkt. # 10) ¶ 67; *see also* 11/14/19 Rankin Decl. ¶ 7, Ex. 6 ("Forum Posts") at JT001350 (quoting "coming soon" message).) Jinni Tech claims that the JinniMag was an attempt to "break R[ED]'s monopoly on memory storage devices for RED cameras." (*See* Resp. to 1st MSJ (Dkt. # 85) at 2.) According to Jinni Tech, RED-branded storage devices "have the same standard features of a generic SSD memory device." (12/06/19 Royce Decl. ¶ 3.) Jinni Tech asserts that RED forces its users to buy RED's storage devices containing generic SSD cards at premium prices by designing its system to work only with RED-branded SSDs, "allowing R[ED] to price gauge [sic] their customers in the process." (*See id.*)

2. <u>Mr. Land's Online Statements</u>

Soon after Jinni Tech posted its "coming soon" message, the JinniMag became a topic of conversation in the online forums on Reduser.net, a "social media platform" on which RED users discuss RED equipment. (*See* 6/16/17 Land Decl. (Dkt. # 17) ¶ 4.) Landmine Media, Inc. ("Landmine"), a Colorado corporation of which Jarred Land is a part owner, operates Reduser.net. (*See id.*) On July 31, 2016, a Reduser.net user created

a thread titled “Cheap third party R[ED] MiniMag replacement – JinniMag?” which quoted Jinni Tech’s “coming soon” message and in which several users made comments or asked questions about the JinniMag. (*See* Forum Posts at JT001350-53.)

On July 31, 2016, Mr. Land made the following post on the Reduser.net thread:

> Guys . . . I can’t tell you how much this pisses me off. Not from a business perspective, but as a patent holder and creator.
>
> Like all of you, we spend a lot of time money and effort creating what we do.
>
> For our media, we developed our own IP and Firmware and spent millions of dollars testing, certifying and [running quality control (“QC”) on] every media card that we ship. Its [sic] why we have significantly less card errors than other companies using generic media . . . even reputable generic media.
>
> Media is one of the most critical components of the entire system and the way we write to a card is very different than a normal SSD is programmed for.
>
> For some random company to hack and duplicate our IP and our firmware (which is the only way they could do this) is exactly like someone stealing your films and calling them their own and selling them to others. It goes against everything I stand for.
>
> I don’t know where this company is from. I assume the UK cover is just bullshit. Someone said China but I really hope this is not the case as China has made such significant improvements over the last decade turning around their attitude towards Copyright infringement, Trademark violations, and IP theft (which it appears this company has broken all three in one swoop)[.]
>
> I am shocked some of you are here are [sic] actually endorsing this.
>
> I will shut RED completely down . . . I am not kidding . . . [i]f stealing each other[’]s shit suddenly is deemed acceptable.
>
> It’s not a world I want to work or create or live in.

(Forum Posts at JT001357-58 (the "July 31 Reduser.net Comment").) On August 1, 2016, Mr. Land made a second post in response to another user's comment:

> You don't get it. This isn't about the money or even about media.
>
> We invented something. Someone is saying they have stole it. And you are sitting there telling everyone that is ok.
>
> It is the same as if you saved up or borrowed $10,000,000 and went and wrote and directed and shot your film. you [sic] edit it together and finish it and put it up on Itunes [sic] for $9.99 to get your money back.
>
> But someone from china [sic] looks at your film and likes it and says "Fuck that guy charging $9.99 for his film on Itunes. I don't think people should pay that much. Lets just download this guys film, steal it, change the opening credits with our logo and reupload it on Itunes and only charge $1.00.["]
>
> That's not right.
>
> Lawyers will deal with these guys doing this. . . . But it is you guys that think that this is OK that have me way way way more pissed off.

(Forum Posts at JT001364-65 (the "August 1 Reduser.net Comment").)

A Facebook user started a similar thread on Facebook on July 31, 2016. (11/14/19 Rankin Decl. ¶ 8, Ex. 7 ("Facebook Posts").) On that day, Mr. Land posted on the thread the following:

> This is not legit . . . not certified . . . not endorsed and will never be because it's bullshit. Even if this was real there are too many inaccuracies and violations going on here to list but I figure you all are smart enough to see through this.

(Facebook Posts at JT001453 (the "July 31 Facebook Comment") (ellipses in original).)

Plaintiffs allege that Mr. Land's statements "caused serious damage to Mr. Royce's professional reputation" and caused Mr. Royce and his family "serious emotional distress, anxiety, and stress, resulting in harm to Mr. Royce's emotional and

physical health, including severe physical pain and a sleep disorder." (FAC ¶¶ 97-98.) They further allege that the statements "impugned the quality and/or integrity of Jinni Tech's products, which caused customers not to deal with Jinni Tech." (*Id.* ¶ 129.)

**B. Procedural Background**

On April 9, 2020, the court granted in part and denied in part RED's first motion for summary judgment. (4/9/20 Order (Dkt. # 90).) In relevant part, the court denied RED's motion with respect to Plaintiffs' tortious interference claim and certain Lanham Act and Washington Consumer Protection Act claims, but granted summary judgment on Plaintiffs' remaining claims, including their claims for defamation and trade libel. (*See generally id.*) Shortly thereafter, the court amended its order in response to RED's motion for clarification. (4/20/20 Order (Dkt. # 93).) On August 28, 2020, the court granted RED's second summary judgment motion and dismissed the claims that had survived RED's first motion. (*See generally* 8/28/20 Order (Dkt. # 104).)

Plaintiffs appealed the court's summary judgment orders. (*See* Not. of Appeal (Dkt. # 105).) On July 19, 2021, the Ninth Circuit Court of Appeals vacated in part and affirmed in part the court's grant of summary judgment to RED and remanded this matter for further proceedings regarding Plaintiffs' defamation and trade libel claims. (*See generally* 9th Cir. Mem.) The Ninth Circuit observed:

> In granting summary judgment in RED's favor on these claims with respect to statements concerning unlawful or criminal behavior, the district court relied solely on the ground that no such statements were made by [Mr.] Land. In doing so, however, the district court appears to have inadvertently overlooked [Mr.] Land's statements and instead addressed only comments posted by RED customers and fans.

(*Id.* at 2.) Accordingly, the Ninth Circuit vacated the court's summary judgment order as to Plaintiffs' defamation and trade libel claims and remanded the matter to "allow [the court] to consider whether [Mr.] Land's comments constitute defamation *per se* [as to Mr. Royce] or trade libel [as to Jinni Tech]." (*Id.*) The Ninth Circuit affirmed the court's grant of summary judgment as to all of Plaintiffs' other claims. (*Id.* at 3.)

## III. ANALYSIS

At the outset, Plaintiffs contend that the court should deny RED's third motion for summary judgment because it is an "untimely and unsupported" motion for reconsideration under Local Civil Rule 7(h). (Resp. at 5 (citing Local Rules W.D. Wash. LCR 7(h)).) The court disagrees. After the Ninth Circuit issued its mandate, the court ordered the parties to file "a joint status report proposing how the court should proceed on remand" and instructed them to "outline their disparate suggestions in the joint status report" if they did not agree on a "unified approach." (8/11/21 Order (Dkt. # 116) at 2.) In their joint status report, the parties proposed that RED would "move for summary judgment on the limited issues that remain on remand." (JSR (Dkt. # 117).) Plaintiffs did not object to this proposal or outline an alternative approach for resolving the remaining issues. (*See id.*) It is too late now for Plaintiffs to protest that RED's motion is improper. Accordingly, the court proceeds to consider RED's third motion for summary judgment.

### A. Standard of Review

Summary judgment is appropriate if the evidence viewed in the light most favorable to the non-moving party shows "that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Beaver v. Tarsadia Hotels*, 816 F.3d 1170, 1177 (9th Cir. 2016). A fact is "material" if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "'genuine' only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party." *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001) (citing *Anderson*, 477 U.S. at 248-49).

The moving party bears the initial burden of showing there is no genuine dispute of material fact and that it is entitled to prevail as a matter of law. *Celotex*, 477 U.S. at 323. If the moving party does not bear the ultimate burden of persuasion at trial, it can show the absence of such a dispute in two ways: (1) by producing evidence negating an essential element of the nonmoving party's case, or (2) by showing that the nonmoving party lacks evidence of an essential element of its claim or defense. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1106 (9th Cir. 2000). If the moving party meets its burden of production, the burden then shifts to the nonmoving party to identify specific facts from which a factfinder could reasonably find in the nonmoving party's favor. *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 250.

**B. Defamation and Trade Libel**

The court first decides the parties' dispute regarding which statements are at issue following the Ninth Circuit's order on remand before analyzing whether the statements support a claim for defamation *per se* or for trade libel.

1. Statements at Issue

RED moves for summary judgment on Plaintiffs' defamation and trade libel claims based on the July 31 and August 1 Reduser.net Comments. (*See, e.g.*, Mot. at 2 (stating belief that Ninth Circuit's order "applies to two discrete statements by Mr. Land"); *id.* at 3-4 (quoting only the July 31 and August 1 Reduser.net Comments).) Plaintiffs, however, state that they base their claims on the July 31 Reduser.net Comment and the July 31 Facebook Comment. (*See* Resp. at 2 (identifying only these two statements).) In reply, RED protests that Plaintiffs are inappropriately attempting to expand the scope of the claims remaining in the case contrary to the Ninth Circuit's limited remand, which directed the court to consider whether Mr. Land's "statements concerning unlawful or criminal behavior" "constitute defamation *per se* or trade libel." (Reply at 2-3 (quoting 9th Cir. Mem. at 2).)

The court agrees with RED. In response to RED's first motion for summary judgment, Plaintiffs identified only the July 31 Reduser.net Comment as a basis for their defamation *per se* claim. (*See* Resp. to 1st MSJ (Dkt. # 85) at 2-3 (making no mention of a Facebook post).) Thus, by now raising Mr. Land's Facebook comment as an additional basis for a finding of defamation or trade libel, Plaintiffs improperly attempt to expand the scope of their remaining claims beyond those considered by the Ninth Circuit. In addition, Plaintiffs only argue in their response that Mr. Land's July 2016 comments were defamatory *per se* and do not respond to RED's arguments regarding the August 1 Reduser.net Comment. (*See* Resp. at 7.) Accordingly, the court proceeds to consider only Mr. Land's July 31 Reduser.net Comment in its analysis.

2. Legal Standards

Under Washington law, to avoid summary judgment on a defamation claim, a plaintiff must make a prima facie showing of facts that would raise a genuine issue of material fact as to each of the following elements: (1) falsity, (2) an unprivileged communication, (3) fault, and (4) that the communication proximately caused damages. *Mark v. Seattle Times*, 635 P.2d 1081, 1089 (Wash. 1981); *see also Mohr v. Grant*, 108 P.3d 768, 776 (Wash. 2005). The prima facie case must consist of specific, material facts, rather than conclusory statements, that would allow a jury to find that each element of defamation exists. *LaMon v. Butler*, 770 P.2d 1027, 1029 (Wash. 1989).

A statement is defamatory *per se* if it "(1) exposes a living person to hatred, contempt, ridicule or obloquy, to deprive him of the benefit of public confidence or social intercourse, or (2) injures him in his business, trade, profession or office." *Caruso v. Local Union No. 690 of Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen and Helpers of Am.,* 670 P.2d 240, 245 (Wash. 1983). If the plaintiff shows the defendant's statements were sufficiently injurious to constitute defamation *per se* the court assumes damage; the plaintiff need not prove actual damages; and the plaintiff may seek general damages for "mental distress, anguish, humiliation, and loss of enjoyment of life." *Davis v. Fred's Appliance, Inc.*, 287 P.3d 51, 61 (Wash. Ct. App. 2012) (citing *Haueter v. Cowles Publ'g Co.*, 811 P.2d 231, 235 (Wash. Ct. App. 1991)); *Maison de France, Ltd. v. Mais Oui!, Inc.*, 108 P.3d 787, 44-45 (Wash. Ct. App. 2005).

The tort of trade libel is "substantively similar to defamation." *Auvil v. CBS 60 Minutes*, 67 F.3d 816, 820 (9th Cir. 1995). "To establish a claim of product

disparagement, also known as trade libel, a plaintiff must allege that the defendant published a knowingly false statement harmful to the interests of another and intended such publication to harm the plaintiff's pecuniary interests." *Id.* (citing Restatement (Second) of Torts § 623A (Am. Law Inst. 1977)).

RED contends that it is entitled to summary judgment on Plaintiffs' defamation and trade libel claims because Mr. Land's statements (1) are not actionable false assertions of fact but rather were speculation or opinions (Mot. at 6-10); (2) do not assert that Mr. Royce was a criminal or committed illegal conduct and therefore are not defamatory *per se* (*id.* at 10-12); (3) are protected by the common interest privilege (*id.* at 12-14); and (4) are substantially true (*id.* at 14-16). Plaintiffs counter that Mr. Land's statements are defamatory *per se* because they (1) accuse Plaintiffs of theft of intellectual property (Resp. at 6-7); (2) are not unactionable opinions (*id.* at 7-8); (3) are not protected by the common interest privilege (*id.* at 8-10); and (4) are not substantially true because there is a question of fact as to whether Plaintiffs infringed RED's intellectual property (*id.* at 10-11).[2]

The court concludes that Mr. Land's statements are not actionable assertions of fact as a matter of law. Moreover, even if the statements were assertions of fact, the court

//

//

---

[2] Inexplicably, Plaintiffs also repeatedly accuse Mr. Land of stating that the JinniMag is a "pirate" version of RED's device. (*See, e.g.*, Resp. at 6, 7, 9.) None of Mr. Land's comments, however, include the word "pirate." (*See supra* at 4-5.)

concludes there is no genuine dispute of fact that they were substantially true. Accordingly, the court GRANTS RED's motion for summary judgment.[3]

3. Mr. Land's Statements Are Not Actionable Assertions of Fact

"Before the truth or falsity of an allegedly defamatory statement can be assessed, a plaintiff must prove that the words constituted a statement of fact, not an opinion." *Robel v. Roundup Corp.*, 59 P.3d 611, 621 (Wash. 2002). "Whether the allegedly defamatory words were intended as a statement of fact or an expression of opinion is a threshold question of law for the court." *Id.* at 622. Courts consider the "totality of the circumstances" to determine whether a statement is actionable. *Dunlap v. Wayne*, 716 P.2d 842, 848 (Wash. 1986). These circumstances include "(1) the medium and context in which the statement was published, (2) the audience to whom it was published, and (3) whether the statement implies undisclosed facts." *Dunlap*, 716 P.2d at 848.

Regarding the first factor, the *Dunlap* court noted statements expressing opinion are found more often in certain contexts. *Dunlap*, 716 P.2d at 848. Thus, "[t]he court should consider the entire communication and note whether the speaker qualified the defamatory statement with cautionary 'terms of apparency.'" *Id.* (quoting *Info. Control Corp. v. Genesis One Comput. Corp.*, 611 F.2d 781, 784 (9th Cir. 1980)). With respect to the second factor, audience expectations are "paramount." *Id.* Accordingly, "[t]he court should consider whether the audience expected the speaker to use exaggeration,

[3] Because the court grants RED's motion on these two grounds, it does not address the parties' arguments regarding the common interest privilege and whether the comments were defamatory *per se*.

rhetoric, or hyperbole." *Id.* "The third and perhaps most crucial factor to consider is whether the statement of opinion implies that undisclosed facts support it." *Id.* "Arguments for actionability disappear when the audience members know the facts underlying an assertion and can judge the truthfulness of the allegedly defamatory statement themselves." *Id.*

Considering the totality of the circumstances, the court concludes that Mr. Land's July 31 Reduser.net Comment, taken as a whole, is not an actionable assertion of fact. First, the medium and context indicate that Mr. Land's statement was an expression of opinion rather than fact. *See id.* Mr. Land made his comment on an Internet discussion forum on which RED users discussed RED products. Washington courts recognize that the Internet is a medium where statements expressing opinions are often found. *See, e.g.*, *Life Designs Ranch, Inc. v. Sommer*, 364 P.3d 129, 136 (Wash. Ct. App. 2015). In addition, Mr. Land used "cautionary 'terms of apparency'" when he wrote that "it *appears*" that Jinni Tech had committed copyright infringement, trademark violations, and theft of intellectual property. *Dunlap*, 716 P.2d at 848; (July 31 Reduser.net Comment (emphasis added)).

The second *Dunlap* factor also supports a finding that Mr. Land's statement is nonactionable opinion. The audience for Mr. Land's statements—members of the RED discussion forum who knew that Mr. Land was the president of RED—would have expected Mr. Land to "use exaggeration, rhetoric, or hyperbole" in reacting to news of a competitor who had announced a product that was both "fully compatible" and more

"affordable" than RED's MiniMag. *Dunlap*, 716 P.2d at 848; (*see* Forum Posts at JT001350).

Finally, the court concludes that Mr. Land's statement, viewed in context, does not imply the existence of undisclosed facts. *Dunlap*, 716 P.2d at 848. Mr. Land's audience knew that Mr. Land made his statement on the very same day that Jinni Tech made its "coming soon" announcement. (*See* FAC ¶ 67; *see generally* Forum Posts.) Moreover, there was no actual JinniMag product available that Mr. Land could have inspected before July 31, 2016, "as Jinni Tech had not yet delivered even one single unit that Mr. Land or RED could have evaluated." (*See* 11/14/19 Rankin Decl. ¶ 9, Ex. 8 (6/29/17 Royce Decl.) ¶ 9.) Indeed, Mr. Royce acknowledged in deposition testimony that Mr. Land "had no facts" about the JinniMag and thus was "making speculations and assumptions." (*See id.* ¶ 5, Ex. 4 ("Royce Dep.") at 142:3-21); *see also Gardner v. Martino*, 563 F.3d 981, 988 (9th Cir. 2009) ("When it is clear that the allegedly defamatory statement is 'speculation on the basis of the limited facts available' it represents a nonactionable personal interpretation of the facts."). Accordingly, the court concludes that Mr. Land's July 31 Reduser.net Comment is not, as a matter of law, an actionable statement of fact. Because Plaintiffs cannot prove this key element of their

//

//

//

//

//

defamation and trade libel claims, the court GRANTS RED's motion for summary judgment.[4]

4. Mr. Land's Statement Was "Substantially True"

Even if Mr. Land's statement were an assertion of fact, the court concludes that Plaintiffs have not met their burden to show that there is a genuine issue of material fact as to whether the statement is "substantially true." Washington courts do "not require a defamation defendant to prove the literal truth of every claimed defamatory statement." *Mohr*, 108 P.3d at 775. Rather, "[a] defendant need only show that the statement is substantially true or that the gist of the story, the portion that carries the 'sting,' is true." *Id.* (quoting *Mark*, 635 P.2d at 1092). "The 'sting' of a report is defined as the gist or substance of a report when considered as a whole." *Id.* (quoting *Herron v. King Broadcasting*, 776 P.2d 98, 102 (Wash. 1989)). "Where a report contains a mixture of true and false statements, a false statement (or statements) affects the 'sting' of a report only when 'significantly greater opprobrium' results from the report containing the falsehood than would result from the report without the falsehood." *Herron*, 776 P.2d at 102.

RED argues that Mr. Land's statements relating to "copyright infringement, trademark violations, . . . IP theft," and "stealing" are substantially true because Mr.

[4] The court further concludes that its analysis of the *Dunlap* factors applies with equal force to the August 1 Reduser.net Comment and the July 31 Facebook Comment and, as a result, neither is an actionable assertion of fact as a matter of law. Thus, even if those comments were within the scope of the court's analysis, summary judgment on any defamation or trade libel claim arising from the comments would be appropriate.

Royce admits that he inspected RED's Mini-Mag and copied certain character strings when he created the JinniMag. (Mot. at 7; *see also* Royce Dep. at 69:1-73:4 (describing his inspection of the Mini-Mag and development of the JinniMag); *id.* at 78:2-7 (admitting he copied characters from the Mini-Mag in creating the JinniMag); *id.* at 116:18-20 (same); *id.* at 178:5-179:18 (same).) Plaintiffs counter that there is a disputed issue of fact as to whether they infringed RED's intellectual property. (Resp. at 10-11.)

Although there may be a dispute of fact regarding whether Jinni Tech and Mr. Royce *actionably* infringed RED's intellectual property, the court nevertheless agrees with RED that there is no genuine dispute of fact that Mr. Royce inspected the JinniMag and "reverse-engineered" it by copying a series of authentication characters without authorization from RED. Thus, the "sting" of the statement—that Plaintiffs "hacked" and "duplicated" the MiniMag—is substantially true, and Plaintiffs cannot prove that Mr. Royce's statement was false.

In sum, Mr. Land's July 31 Reduser.net Comment is not an actionable assertion of fact; and even if it was, there is no material issue of fact that it was substantially true. Accordingly, the court GRANTS RED's motion for summary judgment on Plaintiffs' defamation and trade libel claims.

//

//

//

//

//

## IV. CONCLUSION

For the foregoing reasons, the court GRANTS RED's third motion for summary judgment (Dkt. # 119).

Dated this 18th day of October, 2021.

JAMES L. ROBART
United States District Judge